IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

VANESSA ANDERSON, Individually          *
and on Behalf of a Class of             *
Similarly Situated Persons,             *
                                        *
        Plaintiff,                      *
                                        *
            v.                          *           CV 119-008
                                        *
WILCO LIFE INSURANCE COMPANY,           *
                                        *
        Defendant.                      *
                                        *

_____

**O R D E R**

_____

Before the Court is Plaintiff's motion to remand. (Doc. 21.)
Defendant removed this putative class action from the Superior
Court of Columbia County based on 28 U.S.C. § 1332. Plaintiff
does not dispute the parties are diverse; she only challenges
whether the requisite amount in controversy is met. Because the
Court finds that Defendant has not carried its burden to prove the
amount in controversy exceeds the jurisdiction threshold,
Plaintiff's motion to remand is **GRANTED**.


**I. BACKGROUND**

This putative class action challenges an alleged scheme to
improperly raise the cost of insurance rates charged by Defendant
Wilco Life Insurance Company ("Wilco") on Georgia universal life

insurance policies.  (See Compl., Doc. 1-1, ¶ 1.)  Named Plaintiff Vanessa Anderson, on behalf of the class, alleges Wilco "unilaterally and massively increased" the monthly cost of insurance deductions from her life insurance account by some 300% between 2004 and 2016, in violation of her policy.  (Id. ¶¶ 2, 27.)  These increases significantly increased the cost of maintaining coverage, which eventually led to her policy lapsing. (Id. ¶ 40.)  Plaintiff seeks damages and reinstatement of her policy.  (Id. ¶ 44.)

## A. The Policy

At issue are "universal" or "flexible premium adjustable" life insurance policies held by Georgia residents.  (Compl. ¶¶ 8, 45.)  Under these policies, the insured's premiums are deposited into a savings account from which Wilco deducts certain expenses each month.  (Id. ¶ 16.)  The money in this account is called the "accumulation value," which earns interest at a guaranteed rate. (Id.)  The policyholder has the choice to pay her monthly premiums from external funds or use the existing accumulation value to cover Wilco's monthly deductions.  (Id. ¶¶ 9-10.)

The monthly deductions are composed of a cost of insurance ("COI") charge and a nominal monthly expense charge.  (Id. ¶ 17.) The COI charge is calculated based on the policyholder's mortality risk, and the terms of the policies allow Wilco to annually adjust

2

the COI charges based on changes in mortality. (Id. ¶ 24.) The policies specify certain factors — sex, attained age, and premium class — that can be used to adjust COI charges; each of these factors relates to the insured's mortality risk. (Id. ¶¶ 21, 23.)

Plaintiff entered into her policy in 2001 with monthly premiums of $35.00 and a death benefit of $150,000.00. (Id. ¶ 38; Policy, Doc. 21-1, at 3.) Her policy's maturity date is December 14, 2059, when Plaintiff will be 100 years old. (Policy, at 3.) At the maturity date, Plaintiff will receive the cash surrender value of her policy, and Wilco will no longer have an obligation to pay death benefits. (Id. at 8.)

## B. COI Overcharges

Plaintiff alleges Wilco increased her COI charges for reasons other than those permitted in the policy, namely to recoup losses stemming from the guarantee interest rates Wilco provided with the policies.[1] (See Compl., ¶¶ 27-34.) Due to the statute of limitations, only the COI charges imposed after December 6, 2012, are at issue in this case. (Pl.'s Br., Doc. 21, at 2.) In 2012, the monthly COI deduction taken from Plaintiff's accumulation value increased from $33.10 to $48.18, a 45.46% increase. (Compl., ¶ 27.) In 2013 and 2014, the COI charges were reduced by 1.13%

---

[1] Plaintiff contends the historically low interest rates that have prevailed in the last decade have disrupted insurers' pricing models and caused them to sustain losses from guaranteeing interest rates of 3% or more to policyholders. (Compl. ¶¶ 13-14, 29-32.)

3

and 1.55% respectively. (Id.) However, in 2015, Wilco again increased the COI charges by 23.48% and then another 4.9% the following year. (Id.) These increases made Plaintiff's policy unaffordable; by July 2017 her accumulation value had been depleted and her policy lapsed. (Compl., ¶¶ 39-40.) Plaintiff and the class seek "damages and declaratory and injunctive relief requiring Wilco to (i) reverse the unlawful increase in monthly deductions charged through increased COI rates on the Policies, and (ii) reinstate all Policies that were surrendered or lapsed as a result of the COI charges." (Id. ¶ 44.)

Plaintiff seeks to certify a class of Georgia residents who, as of December 6, 2012, held universal life insurance policies with Wilco and whose COI deductions were subject to the same overcharging scheme. (Id. ¶ 45.) Wilco calculates there are 581 individuals with the same policy as Plaintiff (CIUL2) whose policies lapsed during the class period and an additional 45 individuals with a similar policy (CUL) who suffered the same outcome. (Decl. of Randy Greenwood ("Greenwood Decl."), Doc. 27-1, ¶ 5.) Those policies have an aggregate face value[2] of $75,314,499.00 and $4,767,287.00 respectively. (Id.) Further, Wilco calculates the total COI charges deducted from Georgia CIUL2 policies between July 1, 2015, and Jan. 11, 2019 — the date of

---

[2] Face value refers to the amount of death benefits a policy would pay.

removal — was $3.5 million, but Wilco does not provide the same calculation for the prior portion of the class period. (Id. ¶ 6.)

## C. Procedural History

On December 5, 2018, Plaintiff filed her Class Action Complaint in the Superior Court of Columbia County, Georgia. (Notice of Removal, Doc. 1, ¶ 1.) Wilco was served on December 12, 2018, and removed the case to this Court on January 11, 2019, thirty days later. (Id. ¶ 4.) Wilco's Notice of Removal asserts two independent bases for jurisdiction, traditional diversity jurisdiction and Class Action Fairness Act ("CAFA") jurisdiction. (Id. ¶ 5.) Shortly after removal, Plaintiff filed a motion to remand challenging Wilco's ability to prove the requisite amount in controversy for diversity and CAFA jurisdiction. (Doc. 21.)

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," so "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). A civil action may be removed to federal court only if the court would have original jurisdiction over the case. 28 U.S.C. § 1441(a). Original jurisdiction includes diversity

jurisdiction, which permits a federal court to hear a case where there is complete diversity among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Original jurisdiction also includes CAFA jurisdiction, which requires at least 100 class members, minimal diversity among the parties, and an amount in controversy that exceeds $5 million. 28 U.S.C. § 1332(d).

A defendant seeking to remove a case to federal court must file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 135 S. Ct. 547, 554 (2014); see also 28 U.S.C. § 1446(a). Only where the plaintiff contests the allegation must the defendant prove by a preponderance of the evidence that the amount in controversy is sufficient. Dart, 135 S. Ct. at 554; see also Dudley v. Eli Lilly & Co., 778 F.3d 909, 912-13 (11th Cir. 2014). To determine whether the defendant carried its burden, the court may rely on the evidence introduced by defendant and the reasonable inferences and deductions drawn from that evidence. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 753-54 (11th Cir. 2010). Finally, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved

in favor of remand."[3] <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994).

## III. DISCUSSION

Wilco's Notice of Removal offers two theories to satisfy the subject matter jurisdiction requirement. First, it contends there is traditional diversity jurisdiction under 28 U.S.C. § 1332(a). Wilco is incorporated and has its principal place of business in Indiana while Plaintiff is a citizen of Georgia. (Compl. ¶¶ 4-5.) According to Wilco, the amount in controversy requirement is met because Plaintiff's damages, attorney's fees, and injunctive and declaratory relief are more than $75,000. (Notice of Removal, ¶¶ 8-9.)

Second, Wilco argues this Court has subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d). In Wilco's view, the parties' citizenship satisfies the minimal diversity requirement, the proposed class exceeds 100 members, and the amount in controversy is more than $5 million. (<u>Id.</u> ¶ 10.) In her motion to remand, Plaintiff only challenges whether the amount in controversy is met for both bases of jurisdiction.

---

[3] While this rule applies to traditional diversity cases, the Supreme Court has made clear that it is inapplicable in the context of CAFA jurisdiction. <u>See</u> <u>Dart</u>, 135 S. Ct. at 554

## A. Diversity Jurisdiction

Federal district courts are empowered to hear cases between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

This case principally concerns insurance premiums and an alleged scheme to overcharge policyholders in violation of their policies. Nearly the entire complaint, save for the class allegations, is devoted to describing Plaintiff's life insurance policy and the damages caused by Wilco's increases in COI charges. (See Compl., ¶¶ 7-43, 58-72.) Moreover, all of Plaintiff's requested relief – damages from increased COI charges and policy reinstatement – stems from the alleged scheme to increase premiums.

Plaintiff calculates that her COI damages caused by the overcharging are only $1,149.78, well below the $75,000 threshold. Recognizing this fact, Wilco's primary contention is that Plaintiff's request for reinstatement of her policy puts the $150,000 face value at issue.[4] Thus, the decisive issue is whether reinstatement of the lapsed policy puts the face value of the policy at issue for amount in controversy purposes. If the face value can be included, Wilco can meet its burden; if the face value

---

[4] Wilco makes no attempt to aggregate the putative class members' claims to meet the $75,000 threshold. Any attempt to do so would be foreclosed by Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1356 (11th Cir. 2005). Aggregation is, however, permissible under CAFA to meet the $5 million amount in controversy requirement, as discussed below.

must be excluded, the amount in controversy will be insufficient to confer diversity jurisdiction.

"The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." Leonard v. Enterprise Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002). However, injunctive relief that is "too speculative and immeasurable" cannot be used to satisfy the amount in controversy. Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elec., Inc., 120 F.3d 216, 221-22 (11th Cir. 1997); see also Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268-69 (11th Cir. 2000).

In challenges to the cost of insurance premiums, courts in the Eleventh Circuit routinely find that reliance on future contingencies renders the monetary value of declaratory and injunctive relief too speculative to be considered in the amount in controversy. See, e.g., Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1358 (11th Cir. 2005) (finding the "speculative nature of the value of any such benefit to plaintiffs" from their "tag-along prayer for injunction" excluded it from the amount in controversy calculation); Mann v. Unum Life Ins. Co. of Am., 2012 WL 12897381, at *2 (M.D. Fla. 2013) (monetary value of injunction requiring premium rates to be consistent with state law was too speculative because "the policies could terminate for any number

9

of reasons"), aff'd, 505 F. App'x 854 (11th Cir. 2013); Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1361 (S.D. Fla 2004)) (value of injunction in challenge to health insurance premiums immeasurable because the plaintiff could switch insurers or the defendant could terminate the policy, among other contingencies); Mitchell v. GEICO, 115 F. Supp. 2d 1322, 1327 (M.D. Ala. 2000) (monetary benefit of injunction would materialize only if the plaintiff continued to maintain insurance through the defendant automobile insurer).

The face value of an insurance policy may be used to satisfy the amount in controversy where there is "a dispute about the validity of the policy or the scope of coverage for a claim that put the face amount of the policy at issue." See Friedman, 410 F.3d at 1357; Guardian Life Ins. Co. v. Muniz, 101 F.3d 93, 94 (11th Cir. 1996) (per curiam). Yet, "it is a well settled precept of Eleventh Circuit law that where, in an insurance case, the issue in dispute is the amount of an insured's premiums and not the validity of the insured's policy or its face value, the face value of the insurance policy is irrelevant for purposes of determining the amount in controversy." Schriner v. State Life Ins. Co., 2011 WL 13228577, at *3 (S.D. Fla. Aug. 11, 2011) (citing Friedman, 410 F.3d at 1357; Lutz, 328 F. Supp. 2d at 1355).

Here, Plaintiff is not attacking the validity of her insurance policy, rather she is challenging Wilco's decision to raise COI

charges based on improper factors. Put differently, the issue is not whether there is an enforceable agreement between Plaintiff and Wilco, but instead whether Wilco breached a term of the agreement. And, as stated above, all the requested relief, including reinstatement, flows from this alleged breach.

Wilco cites a handful of cases for its proposition that Plaintiff's request for reinstatement puts the face value of the policy at issue. It primarily relies on Guardian Life Ins. Co. of Am. v. Muniz, 101 F.3d 93 (11th Cir. 1996), where an insurance company sued the policyholder seeking cancellation of a life insurance policy for alleged misrepresentations made in his application. Id. at 94. The Eleventh Circuit stated, "'[t]he policies in suit are contracts by which the insured agrees to pay the premium and the insurer agrees to pay the full face value of the policies on the death of the insured, an event bound to happen.'" Id. (quoting N.Y. Life Ins. Co. v. Swift, 38 F.2d 175, 176 (5th Cir. 1930)). The Eleventh Circuit held that because the insurance company challenged the validity of policy, the district court should have included the face value of the policy in the amount in controversy. Id.

Muniz is distinguishable from this case. In Muniz, the entire dispute concerned whether the insurance policy could be voided based on the insured's misrepresentations; the case had nothing to do with the cost of premiums. In this case, the opposite is true.

11

The issue here is the COI charges — the premiums — imposed on Plaintiff. Again, where "the issue in dispute is the amount of an insured's premiums . . . the face value of the insurance policy is irrelevant for purposes of determining the amount in controversy." Schriner, 2011 WL 13228577, at *3; see also Friedman, 410 F.3d at 1357 ("Where, as here, there is no controversy involving the face value of the policy, but only with regards to certain premiums, it would make no sense to consider the policy's face value to be the amount in controversy.").

Further, in Muniz the plaintiff was the insurance company, so it was appropriate to include the face value in the amount in controversy because that is the amount the plaintiff stood to lose if the policy was not canceled. See 101 F.3d at 94. Conversely, Wilco is not the plaintiff here. Therefore, Wilco's argument that reinstatement will put it at risk of having to pay the face value upon Plaintiff's death is an improper attempt to view the amount in controversy from the defendant's perspective. See Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000). ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.") (citing Ericsson, 120 F.3d at 218-20).

The bottom line is that even if Plaintiff prevails on her claims, she will not necessarily be awarded the face value of the

policy. See Lutz, 328 F. Supp. 2d at 1355 (distinguishing Muniz in premium overcharging case because "Plaintiff is not attacking the validity of the policy, nor will Plaintiff be awarded the face value of the policy if he prevails on his claims"). Unlike the policy in Muniz, Wilco's obligation to pay Plaintiff the policy's death benefits is not certain. Plaintiff could surrender her policy or again be forced to allow it to lapse before her death. Also, the policy is set to mature in 2059 when Plaintiff is 100 years old; it is not inconceivable that Plaintiff could outlive the maturity date.[5] Point being, Wilco paying Plaintiff the policy's face value is not "an event bound to happen." Muniz, 101 F.3d at 94. Thus, it is too speculative to include the face value of Plaintiff's policy in the amount in controversy.

Similarly, the court in Schriner considered a specific request for reinstatement in a cost of insurance case and excluded the face value of the policy from the amount in controversy calculation.[6] See 2011 WL 13228577, at *3. Although the policy

---

[5] If Plaintiff outlives the policy's maturity date, she is entitled to the cash surrender value, which is calculated by subtracting the surrender charge and any debt from the accumulation value. (See Policy, at 14.) It is highly unlikely the cash surrender value will exceed $75,000 in 2059. Between 2001 and 2012, before the alleged COI overcharging began, Plaintiff only generated an accumulation value of $764.90. (Compl., ¶ 39.) Further, it is too speculative to attempt to extrapolate what the potential cash surrender value may be in 2059.

[6] Wilco contends Badaracco v. John Hancock Life Ins. Co., 2012 WL 13034008 (D.N.J. May 7, 2012), holds the opposite. In that case, the plaintiff sought a declaration that his policy did not lapse from non-payment and remained in effect. Id. at *1. The court determined the face value of the life insurance policy was in controversy and denied the plaintiff's motion to remand. Id. This case is also distinguishable because it involved no overcharging allegations, which is the basis for all the relief requested in this case.

in Schriner had not lapsed at the time the plaintiff brought suit, the court did not consider the face value of the policy because, as here, the issue in dispute was the amount of the insured's premiums. Id. at *1-3.

In rebuttal, Wilco cites S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312 (11th Cir. 2014), to support its position that it is not too speculative to consider the face value of Plaintiff's policy in the amount in controversy. In South Florida Wellness, the plaintiffs sought a declaratory judgment that the defendant insurer made insufficient payments on 1.6 million insurance claims, which, if granted, would cause the defendant to owe the class members the amount of the insufficiency. Id. at 1316. To distinguish a prior decision in Leonard holding injunctive relief was too speculative, the Eleventh Circuit stated: "While the issue in Leonard concerned future transactions that were merely possible, the issue here concerns past transactions that actually did occur. The calculations in [the defendant's] affidavit were based on medical treatment that putative class members had already received and actual bills that had already been incurred." Id. at 1317 (emphasis in original).

Unlike the declaratory relief in South Florida Wellness, Plaintiff receiving the policy's death benefits is a future

---

Regardless, Badaracco is an out-of-circuit case with no precedential impact on this Court.

14

transaction that may occur.  The policy may lapse, mature, or be surrendered before there is any obligation for Wilco to pay the face value.  Reinstatement of Plaintiff's policy does not permit her to immediately demand the face value of the policy like the declaratory judgment in South Florida Wellness allowed.  As such, Wilco's reliance on South Florida Wellness is misplaced.

Wilco further argues that the value of reinstatement is not too speculative, stating:

> Any number of things might occur between today and the date of Plaintiff's death that would prevent Plaintiff's beneficiary from collecting the entire $150,000 death benefit.  Indeed, the world may end tomorrow.  But the determination of federal jurisdiction is based only on the facts as they exist at the time of removal, not on facts that may or may not come to pass at some point in the future.  At the time of removal, Plaintiff sought the reinstatement of a life insurance policy that would pay her beneficiary $150,000 if she died, and, under the controlling case law, the value of that relief is $150,000. Consequently, jurisdiction exists.

(Def.'s Br., Doc. 27, at 8 (internal quotations and citations omitted).)  This argument contradicts itself.  Wilco contends jurisdiction cannot be based on facts that may or may not come to pass in the future, only on facts existing at the time of removal. Yet, Plaintiff's death before the policy's maturity date in 2059 is not a fact that exists at the time of removal.  Rather, it is pure speculation on what may occur in the future.

Admittedly, it is at least plausible that Muniz could be interpreted as lending some support to Wilco's position that a

request for reinstatement puts the face value of Plaintiff's policy at issue. However, on a motion to remand such as this, all doubts must be resolved in favor of remand. Burns, 31 F.3d at 1095. Moreover, the analogous cases rejecting Muniz's reasoning lends significant support to the Court's conclusion. See, e.g., Friedman, 410 F.3d at 1357; Lutz, 328 F. Supp. 2d at 1355.

To summarize, Plaintiff's request for reinstatement does not put the face value at issue because Plaintiff is challenging Wilco's COI charges and it is too speculative to assume Wilco will pay the policy's death benefits to Plaintiff. As such, Defendant cannot carry its burden to show Plaintiff's claims meet the required amount in controversy for diversity jurisdiction.

## B. CAFA Jurisdiction

CAFA grants federal courts original jurisdiction over class actions where the class has at least 100 members, the parties are minimally diverse, and the aggregated amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); see also Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013). The purpose of CAFA was to expand federal court jurisdiction over class actions and ensure "interstate cases of national importance" are heard in a federal forum. See Dart, 135 S. Ct. at 554 (citing Standard Fire, 568 U.S. at 595; S. Rep. No. 109-14, p. 43 (2005)).

Consistent with this purpose, there is no presumption against removal in CAFA cases, unlike in regular diversity cases. See id.

Turning to the case at hand, it is undisputed that the class contains more than 100 members and Wilco, as a company headquartered and organized in Indiana, is diverse from Plaintiff, who resides in Georgia. (Notice of Removal, ¶¶ 12–13.) Accordingly, the only issue in dispute is whether the class's aggregate damages exceed $5 million.

Wilco advances two arguments to satisfy the amount in controversy. First, it borrows the reasoning from above that the class's request for reinstatement of their policies puts the face value of those policies at issue. Across the entire class, the total aggregate death benefits payable on those policies is $76,314,499.00. (Greenwood Decl., ¶ 5.) Second, Wilco contends the total COI charges collected from the class members since December 6, 2012, exceeds $5 million.

Wilco's first argument is foreclosed by the speculative nature of Plaintiff's injunctive and declaratory relief, as discussed above. Simply because class members' policies are reinstated does not mean they will collect the face value of those policies. Class members may outlive their policy's maturity date, elect to discontinue coverage, or find themselves unable to afford the coverage.

Wilco's second argument also fails to meet its burden. Wilco calculated that between July 1, 2015, and the date of removal it charged $3.5 million in COI deductions from the cash value of Georgia CIUL2 policies. (Id. ¶ 6.) From this number, Wilco extrapolates that the total charges for the entire class period are about $7 million, approximately double. (Id.) This argument fails to meet Defendant's burden for several reasons.

First, the class is not challenging the *total* COI charges for the class period, rather they are only seeking to recover the portion of those increased charges attributable to reasons not permitted by the policies. Between 2004 and 2011, the COI increased 11.25%, 10.12%, 9.19%, 7.10%, 5.15%, 6.10%, and 6.33% respectively, an average yearly increase of 7.89%. (Compl., ¶ 27.) Plaintiff does not allege that the COI increases in those years was improper. Because the COI increased in each of the seven prior years, it is reasonable to assume that the 45.47% increase in 2011–2012 was not entirely improper. Said another way, a portion of the 45.47% increase can be attributed to factors that the policy expressly authorizes Wilco to use in raising the COI. In short, Wilco's $3.5 million calculation incorporates COI charges that do not breach the terms of the policy and, therefore, cannot be

recovered as damages.[7]  For that reason, Wilco's calculation is entitled to little weight.

Further, the $3.5 million figure is derived from the forty-one-month period of July 1, 2015, to January 11, 2019.[8]  The previous portion of the class period — from December 6, 2012, to June 30, 2015 — is only thirty-one months; ten months shorter than the period used to calculate $3.5 million.  Thus, it is not reasonable for Wilco to simply double the $3.5 million figure to meet the amount in controversy.  Moreover, the COI charge actually *decreased* by 1.13% in 2012-2013 and again by 1.55% in 2013-2014. (Id.)  Therefore, class members paid lower COI charges in those years than in 2011-2012.  Conversely, the COI charges increased 23.48% in 2014-2015 and 4.9% in 2015-2016.  The reasonable inference from all these figures is that the class members' COI damages from July 2015 to January 2019 are higher than the COI damages from December 2012 to June 2015.  Further supporting that inference is the fact that the total dollar number of the annual COI charge was higher in absolute terms after July 2015 than it was during the prior period.  Simply put, the class members'

_____

[7] The court in Lutz rejected the same argument Wilco makes here.  See Lutz, 328 F. Supp. 2d at 1354 ("Plaintiff does not dispute that Defendant was entitled to increase the premiums over time equally based upon normal rating factors. Instead, Plaintiff seeks damages only for the component of the total premium increase that is attributable to individual health status-related factors.")

[8] January 11, 2019, was the date Wilco filed its Notice of Removal and first made the $3.5 million allegation.  (Notice of Removal, ¶ 16.)  On a motion to remand, the amount in controversy is determined as of the date of removal.  See Leonard, 279 F.3d at 972.

damages were higher in the years after July 2015 than in the years before July 2015. Overall, Wilco's $3.5 million COI damages figure overstates the class's damages and is insufficient to carry its burden to show the amount in controversy exceeds $5 million.

As a final note, it is curious that Wilco was able to calculate a dollar figure for the COI charges between July 1, 2015, and January 11, 2019, but is either unable or unwilling to make that same calculation for the previous period. If the underlying data is available for the second period, then it is reasonable to assume data is also available for the first period. This omission suggests the COI charges for December 6, 2012, to June 30, 2015, did not exceed $1.5 million. If those charges did exceed $1.5 million there would be little reason to omit them because it would provide considerable proof that Wilco could meet the amount in controversy. Cf. Creel v. Comm'r of Internal Revenue, 419 F.3d 1135, 1142 (11th Cir. 2005) ("It is well settled that the production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." (quoting Thelma C. Raley, Inc. v. Kleppe, 867 F.2d 1326, 1329 (11th Cir. 1989))). While this omission alone does not rebut Wilco's arguments, it does cast further doubt on its ability to prove the amount in controversy. Considering all the apparent flaws with the $3.5 million calculation, the Court finds that Wilco failed to

carry its burden to show there is more than $5 million in controversy.

## C. Attorney's Fees

Finally, Wilco attempts to use Plaintiff's attorney's fees request as part of the amount in controversy. That position, however, is contrary to governing law. The general rule is that attorney's fees represent costs and are excluded from the amount in controversy, but where "a statutory cause of action entitles a party to recover reasonable attorney fees, the amount in controversy includes consideration of the amount of those fees." Cohen, 204 F.3d at 1079. Here, Plaintiff claims are for breach of contract under Georgia law, which does not provide for attorney's fees. Further, the policy contains no provision regarding attorney's fees.

Wilco also points to attorney's fees awards in the cost of insurance class action settlements cited in Plaintiff's Complaint. Each of these four settlements had attorney's fees awards that exceeded $5 million.[9]  (See Compl., ¶ 14; Def.'s Br., at 13.) Contrary to Defendant's contention, the rule in the Eleventh Circuit is that attorney's fees from a class action common fund are not included in the amount in controversy. See Davis v. Carl

---

[9] The Court is hesitant to even consider those attorney's fees awards because settlement agreements made in other cases have little, if any, bearing on the amount in controversy in this case.

_Cannon Chevrolet-Olds, Inc._, 182 F.3d 792, 796 (11th Cir. 1999); _see also_ 14AA Charles A. Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 3704.2 (4th ed.) ("[A]ttorneys' fees paid from a common fund recovery cannot be considered for amount in controversy purposes because they are not damage elements, do not enhance any plaintiff's claim against any defendant, and actually are deducted from the common fund. They are not 'in controversy.'"). This rule recognizes that common fund attorney's fees are "a matter solely for the court and the plaintiffs' lawyers (or the defendant and the plaintiffs' lawyers in the case of settlement), [and] is often calculated without representation of the plaintiffs' interests." _Davis_, 182 F.3d at 797. As such, no matter how large an eventual award of attorney's fees may be, it cannot be used to meet the amount in controversy requirement.

## IV. CONCLUSION

Defendant has failed to carry its burden to prove by a preponderance of the evidence that the amount in controversy is satisfied for traditional diversity jurisdiction or for CAFA jurisdiction. Accordingly, Plaintiff's motion to remand (Doc. 21) is **GRANTED**. The Clerk shall **TERMINATE** the other pending motion (Doc. 22) and **REMAND** this case to the Superior Court of Columbia County, Georgia.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of June, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA