**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| VANESSA ANDERSON, individually and on behalf of a class of similarly situated persons, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| vs. | ) ) | Case No. 1:19-cv-00008-JRH-BKE |
| WILCO LIFE INSURANCE COMPANY, | ) ) ) | |
| *Defendant*. | ) | |

---

**WILCO LIFE INSURANCE COMPANY'S RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

---

Defendant Wilco Life Insurance Company ("Wilco Life") moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

This case challenges life insurers' ability to establish cost of insurance ("COI") rates in universal life insurance policies.  Plaintiff Vanessa Anderson is a former Wilco Life policyholder.  She claims that Wilco Life breached the terms of her universal life policy (and the implied covenant of good faith and fair dealing) by increasing the current monthly COI rates for her policy for reasons other than a change in mortality expectations; she makes this allegation even though Plaintiff's policy does not use the word "mortality" in defining the COI rates in the Cost of Insurance Rates section of the policy.  She seeks damages, a declaratory judgment, and injunctive relief on behalf of herself and a statewide class of all Georgia residents who own or owned a universal life insurance policy issued by Wilco Life for which there was an increase in COI rates in or after 2012.

Both of Plaintiff's claims turn on her erroneous interpretation of a policy provision stating that "*[t]he guaranteed monthly* cost of insurance rates for the policy are *based on* the insured's sex, attained age and premium class on the date of issue."  (emphasis added). Plaintiff interprets "based on" in this provision to mean that Wilco Life could consider *only* sex, attained age, and premium class in calculating current COI rates and contends that, because those factors "all relate to mortality risk," Wilco Life could increase current COI rates only in the event of a material, adverse change in mortality rates.

The Court should dismiss Plaintiff's breach of contract claim because the policy is not reasonably susceptible to the interpretation she seeks to give it.  On its face, this

provision applies only to her policy's "*guaranteed* monthly cost of insurance rates." The *current* monthly COI rates are governed by the immediately following paragraph in the policy, which states:

> Current monthly cost of insurance rates will be determined by the Company. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

This paragraph makes clear that current monthly COI rates are set by the Company, subject only to the restriction that they cannot be greater than the guaranteed maximum rates. Plaintiff's claims are insupportable as a matter of law because she neither alleges that Wilco Life charged COI rates greater than the guaranteed maximum rates nor complains about a change to the *guaranteed* monthly COI rates applicable to her policy.

Plaintiff's claims would fail even if the "based on" provision did govern the current monthly COI rates. By interpreting "based on" to mean "exclusively based on," Plaintiff contradicts dictionary definitions of the term, common usage, and the only federal appellate court to interpret a COI rate provision. In *Norem v. Lincoln Benefit Life Ins. Co.*, 737 F.3d 1145 (7th Cir. 2013), and *Thao v. Midland National Life Ins. Co.*, 549 F. App'x 534 (7th Cir. 2013), the Seventh Circuit interpreted COI provisions materially identical to the provisions in Plaintiff's policy and concluded that when the policy says that monthly COI rates will be "based on" certain factors, it does not mean that the rate will be based exclusively on those factors. *Norem*, 737 F.3d at 1148-52.

The Court should also dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. That claim is based on the very same allegations as Plaintiff's breach of contract claim. Although Georgia law implies a duty of good faith and fair dealing in every contract, breach of that duty is not actionable as an independent

cause of action.  Rather, the implied duty modifies and becomes part of the contract itself, meaning "it is not an undertaking that can be breached apart from those terms."  *Alan's of Atlanta v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990).  Every federal district court in Georgia—including this one—has concluded that a claim for breach of good faith and fair dealing is "duplicative" of a breach of contract claim and must be dismissed.  This case is no different.

### PLAINTIFF'S ALLEGATIONS

**1.      The Parties**

Plaintiff Vanessa Anderson ("Plaintiff" or "Anderson") purchased a Flexible Premium Adjustable Life Insurance Policy from Conseco Life Insurance Company in 2001.  Compl. ¶ 38 & Ex. A.  Anderson's policy is a type of universal life insurance policy.  *Id.* ¶ 8.  Conseco Life subsequently changed its name to Wilco Life.  *Id.* ¶ 5.

**2.      Universal Life Insurance Policies, Generally**

Universal life insurance is best understood when compared to two other common types of life insurance: term life and whole life.  Compl. ¶ 7.  Term life insurance is life insurance that covers the insured only for a specified period and is not redeemable for a cash value during the insured's life.  *Id.*  Whole life insurance, on the other hand, is life insurance that covers the insured for life, during which the insured pays fixed premiums and accumulates savings from an invested portion of the premiums.  *Id.*; *Life Insurance*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Like whole life insurance, universal life insurance allows the policyholder to accumulate savings while the insured is still alive.  Compl. ¶¶ 8-9.  But unlike whole life insurance, universal life insurance policies do not have fixed premiums that are guaranteed

to keep the coverage in force for the insured's whole life.  *Id.* ¶¶ 9-10.  Rather, the policyholder can adjust the timing and amount of his or her premium payments over time depending on the level of the policy's savings account, which, in Plaintiff's policy, was called the "Accumulation Value."  *Id.* ¶¶ 10, 16.

Premiums paid by the policyholder are credited to the policy's Accumulation Value after deduction of a premium expense charge.  Compl. ¶ 16; Policy 12.[1]  Each month, the insurer deducts certain charges, including policy expenses and COI charges, and in turn, the insurer calculates and includes certain credits into the Accumulation Value, such as interest at a rate, which typically has guaranteed minimum rate set forth in the policy.  Compl. ¶¶ 11, 16; Policy 12.[2]  As long as the Accumulation Value is sufficient to cover the next month's deductions and surrender charges, the policy remains in force.  Compl. ¶ 10.  If the accumulation value is insufficient to cover the next monthly deduction, however, the policy enters a grace period and will lapse unless the policyholder pays an additional premium sufficient to cover the upcoming month's deductions.  *Id.*; Policy 9.

### 3.      The Cost of Insurance Provision in Anderson's Policy

Plaintiff's claims arise from the amount that Wilco Life deducted from her policy each month for COI charges. Plaintiff's policy contains a provision addressing how the COI charge is calculated.  It states in relevant part:

**COST OF INSURANCE**

---

[1] A complete specimen of Anderson's policy is attached to this motion as Exhibit A; however, social security and driver's license information was redacted from the accompanying policy application.  Citations to the policy are to the policy's original pagination appearing in the bottom center of the page, not to the page numbers imprinted by the Court's CM/ECF system.

[2] Wilco Life also credited Anderson's accumulation value with an annual "Accumulation Value Bonus" tied to the performance of the S&P 500 stock exchange.  Policy 12.

> The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:
>
> a. Monthly cost of insurance rate as described in the *Cost of Insurance Rates section*;
>
> b. Insured's death benefit at the beginning of the policy month divided by 1.0024663;
>
> c. Accumulation Value at the beginning of the policy month.

Policy 12 (emphasis added).

The "Cost of Insurance Rates" section authorized Wilco Life to use COI rates up to the guaranteed maximum rates specified in the Policy Data Page in computing the COI. Compl. ¶ 19; Policy 13. The guaranteed monthly COI rates for the policy appear in a table in the Policy Data Page. Compl. ¶ 20; Policy 4-5, 13. The policy provides that "[c]urrent monthly cost of insurance rates," *i.e.*, those actually used by the insurer each month, "will be determined by the Company," subject only to the restriction that they "will not be greater than the guaranteed rates." The full provision states:

### COST OF INSURANCE RATES

> The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue. Attained age means age on the prior policy anniversary except when this policy is issued when it means age last birthday prior to policy date. These rates are shown on a Policy Data Page.
>
> Current monthly cost of insurance rates will be determined by the Company. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

Compl. ¶ 19; Policy 13. In her policy application incorporated into the policy, Plaintiff acknowledged her understanding that COI charges could change in the future and impact how her policy would perform:

AFFIRMATION OF UNDERSTANDING

> I understand that any sales proposal or policy illustration that has been presented to me as part of the agent's sales presentation may contain certain non-guaranteed elements.   These non-guaranteed elements include expense charges, cost of insurance charges and interest crediting rates.  A change in any or all of these non-guaranteed elements or in the amount or timing of premium payment may affect the performance illustrated such that values actually realized may be less than or greater than the values illustrated.  I further understand that any tax implications in a sales proposal are based on current tax law and that any questions concerning taxes should be referred to my personal tax advisor.

Exhibit A, Policy Application CLIC-MLA-98 at p.3.

**4.      Wilco Life's Cost of Insurance Rate Increase**

Plaintiff alleges that "[s]tarting in or around 2011-2012," Wilco Life raised the cost of insurance rates applicable to her policy, which "vastly increased the amount taken from [her] accumulated value . . . every month."  Compl. ¶ 27.[3]   Plaintiff paid the increased COI charge without complaint for more than five years before allowing her policy to lapse in 2017.  *Id.* ¶ 40.  In December 2018—more than six and a half years after the rate increase became effective—Plaintiff filed this lawsuit alleging that the COI increase violated the express terms of her policy and the implied duty of good faith and fair dealing. *Id.* ¶ 42.

**5.      Plaintiff's Interpretation of the Policy**

Plaintiff contends in her Complaint that the "Cost of Insurance Rates" section of her policy authorized Wilco Life "to set the cost of insurance rates for [her policy] based *only* on the insured's sex, attained age, and premium class on the date of issue…."  Compl.

---

[3] As shown in Wilco Life's Motion for Summary Judgment, Wilco Life notified Anderson of the rate increase by letter dated June 20, 2011, and the increase became effective July 1, 2011.  Thus, the rate increase occurred, and Anderson was aware of it, more than six years before she waited to file suit, which is the limitations period applicable to all of Anderson's claims.

¶ 21 (emphasis added).  Although the policy's Cost of Insurance Rates section does not have a restriction to "mortality" or contain the word "mortality" when discussing the current monthly COI rates, Plaintiff contends that because the factors listed in the guaranteed rate table—insured's sex, attained age, and premium class—"all relate to mortality risk," Wilco Life can adjust current COI rates "only in the event of a material, adverse change in mortality rates."  *Id.*  ¶¶ 24-25.  Without a basis in fact or support, Plaintiff alleges, on mere rank speculation, that the 2011 rate increase breached the policy because it was not prompted by an increase in mortality but instead was "motivated by Wilco's desire to make the Policies collectively more profitable by inducing more of them to lapse."  *Id.* ¶¶ 29-34.

## LEGAL STANDARD APPLICABLE TO THIS MOTION

Wilco Life moves to dismiss the complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Wilco Life's motion is based on the allegations in Plaintiff's Complaint and the terms of her life insurance policy, which is incorporated by reference to the Complaint.  A complete copy of the policy and application is attached hereto as Exhibit A.  To the extent the allegations in the complaint contradict the express terms of her policy, the terms of the policy control.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  In ruling on the motion, the Court should not accept Plaintiff's allegations about the meaning of the policy.  Instead, the Court must independently examine the policy and form its own conclusion about the proper construction of the relevant language.  *Id.*

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).   In other words, a plaintiff must also allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 681.  Allegations that are "'merely consistent with' a defendant's liability . . . 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Although the Court must accept a plaintiff's well-pleaded factual allegations as true, conclusory allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Similarly, a court need not credit bare legal conclusions nor credit allegations that contradict exhibits to the complaint. *Id.*; *Griffin Indus.,* 496 F.3d at 1205-06.

## ARGUMENT

**1.    Plaintiff's Breach of Contract Claim Fails as a Matter of Law Because Her Interpretation of the Policy is Unreasonable as a Matter of Law.**

Whether Plaintiff's complaint states a viable claim for relief turns on her contention that the terms of her policy prohibited Wilco Life from considering factors other than "mortality" in determining monthly COI rates.  That interpretation is unreasonable as a matter of law because it contradicts the plain and ordinary meaning of the policy's terms, common usage, and the relevant case law.

### A.    Georgia Law Governs the Interpretation of Anderson's Policy.

Under Georgia law, insurance policies are interpreted according to "the ordinary rules of construction" applicable to all other contracts. *Progressive Ins. Co. v. Brown*, 413 S.E.2d 430, 431 (Ga. 1992). This means, among other things, that the words of the policy must be given their plain and ordinary meaning, and that all policy provisions be construed together with all others, to bring them into harmony. O.C.G.A. § 13-2-2(2). In addition, a contract "should be given a reasonable interpretation," *Payne v. Middlesex Ins. Co.*, 578 S.E.2d 470, 472 (Ga. Ct. App. 2003), that "advance[s] the beneficial purposes intended to be accomplished," *Cherokee Credit Life Ins. Co. v. Baker*, 168 S.E.2d 171, 174 (Ga. Ct. App. 1969), and considers "all attendant and surrounding circumstances," *Bress v. Keep-Safe Indus., Inc.*, 271 S.E.2d 867, 869 (Ga. Ct. App. 1980).

If a contract is unambiguous, "it must be enforced as written." *Ryan v. State Farm Mut. Auto Ins. Co.*, 413 S.E.2d 705, 707 (Ga. 1992). A contract is unambiguous if it is susceptible to only one reasonable interpretation. *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1231 (11th Cir. 2017). If, on the other hand, the contract is reasonably susceptible to more than one interpretation, the Court must then apply the rules of contract construction to determine which interpretation is the right one. *Citrus Tower Blvd. Imaging Ctr., LLC v. Owens*, 752 S.E.2d 74, 81 (Ga. Ct. App. 2013). Only if the Court cannot resolve the ambiguity using the rules of construction is the interpretation an issue for a jury. *Id.*

### B.    The Policy Does Not Limit The Factors Wilco Life Can Consider In Determining Current Monthly COI Rates.

The Court should dismiss Plaintiff's breach of contract claim because it cannot reasonably be interpreted to mean that Wilco Life could adjust current COI rates only

because of a material adverse change in mortality.  Conversely, the policy has only one possible meaning: which is that Wilco Life could set the current monthly COI rates in a manner it deemed appropriate, as long as they were less than the guaranteed maximum rates.  Plaintiff does not allege that Wilco Life ever charged COI rates greater than the guaranteed maximum rates.  Thus, as a matter of law, she fails to allege a breach.

> *(1)*    **The "based on" language that Anderson relies on expressly applies to the "guaranteed" monthly cost of insurance rates, not "current" monthly cost of insurance rates.**

The policy's Cost of Insurance Rates section clearly does not have an express restriction tied to "mortality" for current COI rates.  In fact, the description of current COI rates does not contain the word "mortality." Plaintiff contends that because the factors listed in the guaranteed rate table—insured's sex, attained age, and premium class—"all relate to mortality risk" the policy can only be read to limit the adjustment of COI rates to a materially adverse change to mortality.

Plaintiff relies on the highlighted and emboldened language below:

COST OF INSURANCE RATES

**The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue.**   Attained age means age on the prior policy anniversary except when this policy is issued when it means age last birthday prior to policy date.  These rates are shown on a Policy Data Page.

Current monthly cost of insurance rates will be determined by the Company.  The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are list on a Policy Data Page.

Compl. ¶ 19; Policy 13.

On its face, the highlighted provision applies only to the *guaranteed* monthly COI rates.  It says nothing about the *current* monthly COI rates, which are the monthly COI

rates that Wilco Life actually used.  In focusing on the language applicable to *guaranteed* monthly COI rates, Plaintiff ignores the very next paragraph, which pertains to *current* monthly COI rates:

> **Current monthly cost of insurance rates will be determined by the Company.  The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates** which are listed on a Policy Data Page.

*Id.*  The language Plaintiff relies upon explains how the guaranteed maximum COI rates are calculated and organized.  But the following paragraph specifically references the current monthly COI rates. This language authorizes Wilco Life to use COI rates up to the guaranteed maximum rates specified on the Policy Data Page in computing the current COI rates.  *Id.*  The "[c]urrent monthly cost of insurance rates will be determined by the Company."  *Id.*  And the only restriction is that those current rates "will not be greater than the guaranteed [maximum] rates" shown on the Policy Data Page.  *Id.*; *see e.g. Coffman v. Pruco Life Ins. Co.*, 2011 WL 4550152 *3 (D.N.J. Sept. 29, 2011); *Baymiller v. Guarantee Mut. Life Ins. Co.*, 2000 WL 1026565 *2 (C.D. Cal. May 3, 2000).

### (2)    *The phrase "based on" does not mean "exclusively based on."*

Even if the Court accepted Plaintiff's argument that the language relied upon also specifically restricts and limits the current COI rates that are calculated, Plaintiff's proposed interpretation contradicts the only federal appellate court to interpret the "based on" provision pertaining to the guaranteed rates—not the current rates—like Plaintiff is relying upon.  In *Norem v. Lincoln Benefit Life Ins. Co.*, 737 F.3d 1145 (7th Cir. 2013) and *Thao v. Midland National Life Ins. Co.*, 549 F. App'x 534 (7th Cir. 2013), the Seventh Circuit held that when the policy says that the monthly COI rate will be "based on" specified factors, it does not mean that the rate will be based exclusively on those factors."

737 F.3d at 1148-52.  In those cases, the COI provision read: "The cost of insurance rate is based on the insured's sex, issue age, policy year, and payment class.  The rates will be determined by us, but they will never be more than the guaranteed rates . . . ." *Norem*, 737 F.3d at 1147.  Just like Plaintiff does here, the plaintiff in those cases argued that the insurer breached this provision because it "consider[ed] factors beyond the insured's sex, issue age, policy year, and payment class" in determining current cost-of-insurance rates. *Id.* at 1148.  The Seventh Circuit rejected that argument, holding that when the policy says that the monthly cost of insurance rate will be "based on" specified factors, it does not mean that the rate will be based exclusively on those factors.  *Id.* at 1148-52.

The way in which the Seventh Circuit reached its conclusion is entirely consistent with Georgia construction principles.  Consistent with the approach dictated by Georgia law, the *Norem* court began its analysis with the plain and ordinary meaning of the phrase "based on." *Id.* at 1149.  The court noted that "the dictionary defines the word 'base' as (1) a main ingredient; (2) a supporting or carrying ingredient; or (3) the fundamental part of something." *Id.* (internal quotation marks omitted); *see also Grange Mut. Cas. Co.*, 861 F.3d at 1231 (under Georgia law, "dictionaries may supply the plain and ordinary meaning of a word" (internal quotation marks and brackets omitted)).  The court concluded that none of these definitions "lend[] [themselves] to Dr. Norem's proposed interpretation that 'base' or 'based on' implies exclusivity." *Norem*, 737 F.3d at 1150.

Common usage supports the Seventh Circuit's conclusion.  Common usage of the phrase "based on" in the context of the policy means that the guaranteed monthly COI rates are *organized by* sex, age, and premium class.  As the district court in *Thao* stated: "[i]f a shipping company informed a customer that its rated were 'based on' the size, weight and destination [of the package], the customer would understand that what the

company meant is that it has a pricing schedule that is organized by size, weight and destination—not that the company considered only size, weight and destination when setting the rates that appear on the schedule." *Thao v. Midland Life Ins. Co.*, 2013 WL 119871, at *2 (E.D. Wisc. Jan. 9, 2013), *aff'd*, 549 F. App'x 534 (7th Cir. 2013). Likewise, when Plaintiff's policy states that guaranteed COI rates are "based on" attained age, sex, and premium class, a reasonable policyholder would understand that those factors are what will cause rates to vary from one insured to another—not that Wilco Life considered only those factors in computing the rates. *See id.*; *Norem*, 737 F.3d at 1150.

In *Maxon v. Sentry Life Ins. Co.*, the court followed this same reasoning in dismissing the plaintiff's complaint noting that the term "based on" in a life insurance policy does not bind an insurer to only consider those factors expressly listed in a COI provision. *Maxon v. Sentry Life Ins. Co.*, 2019 WL 4540057, at *4 (W.D. Wisc. Sept. 19, 2019). In dismissing the plaintiff's claims, the *Maxon* court also noted that the "based on" enumerated factors are merely a tool to "'differentiate one insured from another and insure that similarly situated insureds will be treated alike in the amounts they are charged for the cost of insurance'" and still permits an insurer to set COI "rates according to the `goals of [the insurer's] business as a for-profit life insurance company.'" *Id.* at *5. So too here.

> ### (3)   *Interpreting Plaintiff's Policy to mean that Wilco Life could only consider age, sex, and premium class in setting currently monthly cost of insurance rates ignores the commercial realities of insurance.*

Furthermore, Plaintiff's proposed interpretation of her policy cannot be a reasonable one because it not only defies the ordinary meaning of the words used but also ignores the commercial realities of insurance. It would be impossible for a life insurer to calculate COI rates based *only* on age, sex, and premium class, as she advocates. Those

factors are merely immutable characteristics; they cannot be converted into a numerical rate that expresses the cost of insuring a particular group without also taking into account data and assumptions about the insurer's anticipated costs and profit goals.

The shipping example again provides a useful analogy:  a shipper cannot determine the price of shipping a package simply by looking at the package's size, weight, and destination.  Rather, it must consider the cost of various inputs (*e.g.*, the price of gas, speed of delivery, the driver's wages, taxes, etc.) and its profit expectations before it can set an appropriate price.  *See Thao*, 2013 WL 119871, at *2.  Thus, even if price is "based on" size, weight, and destination," there must be other inputs in the equation.  Life insurance is no different.  *See id.*; *Norem*, 737 F.3d at 1154-55 (concluding that a policy interpretation that does not allow the insurer to make a profit "seems disconnected from the reality of insurance").

Plaintiff's interpretation of her COI rates is also unreasonable because it assumes, without reason, that mortality is the only factor that determines the cost of providing insurance.  The essence of life insurance is the pooling of risks (*i.e.*, policyholders) so that the insurer can spread the cost of providing coverage across many policyholders while still making a sufficient profit to continue operating.  *See* 1 *Appleman on Insurance* § 1.01[1], at 1-4.  The collective costs of insuring a particular pool of policyholders for as long as those policyholders will live involves much more than pure mortality.  The insurer must consider—among other things—the number of policyholders in the relevant group (which, in turn, is affected by rate of lapses and surrenders), the amount of death benefits payable on those policies, the amount of premium the policyholders will pay and for how long. The insurer must also consider its insured's expected investment experience and profits because those factors impact how long the insurer will be able to continue operating to pay

15

death benefits.  Simply looking at mortality (*i.e.*, the death rate) gives only a glimpse of the factors that ultimately determine the insurer's cost of providing insurance.

Context matters when interpreting a contract, and any contract interpretation must be reasonable in light of the relevant context. *Cf. Archer W. Contractors, Ltd. v. Estate of Pitts,* 735 S.E.2d 772, 777 (Ga. 2012).  The relevant context makes clear that Plaintiff's interpretation of her policy's COI rate provision is patently unreasonable.  As the Seventh Circuit concluded in *Norem* and *Thao*, Wilco Life was not limited to considering only sex, attained age, and premium class in determining COI rates.  Anderson's allegations that Wilco Life breached that provision by considering other factors in deciding to raise rates therefore fail to state a claim upon which relief can be granted.

### C.     Plaintiff Does Not Allege Facts Permitting a Plausible Inference That Wilco Life Determined COI Rates Based On Impermissible Factors.

For the sake of argument, even if the Court determines that the policy *does* limit the factors that Wilco Life can consider in setting COI rates, the Court should dismiss Plaintiff's breach of contract claim because she does not allege facts plausibly suggesting that Wilco Life actually relied on any impermissible factors in deciding to raise rates.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 547.

Although the plausibility standard is "not akin to a probability requirement," it does ask for "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  To plead "more than a sheer possibility" that Wilco Life breached the policy, Plaintiff must allege *some fact* from which the Court can draw the reasonable inference that Wilco Life considered some factor other than mortality in deciding to raise rates.  *See Iqbal*, 556 U.S. at 678.

Plaintiff has not done this. Essentially, she alleges that Wilco Life must have considered factors other than mortality in deciding to raise rates because "mortality rates have only improved" since Wilco Life issued the policies. Compl. ¶ 26. But that assumes that Wilco Life's COI is tied to "overall mortality"—*i.e.*, mortality of the public in general or the entire policyholder populations. Plaintiff admits that mortality is not only to be evaluated as an overall population. In fact, she alleges that the COI component of a universal life policy "represents the risk (or cost) of insuring *a particular age group*." Compl. ¶ 11. Thus, the mortality that matters to an insurer is the mortality of the insureds in a particular group of policies. Wilco Life's mortality experience (*i.e.*, the death rate) with respect to a particular age group or policy group may be worse than expected even as overall mortality improves, meaning that, even if Plaintiff's interpretation of the policy is correct, Wilco Life could increase COI rates for a particular block or sub-block of policies, even as overall mortality improves, even under Plaintiff's theory. In fact, there were adverse future expectations of mortality for this product.

Plaintiff's other allegations about Wilco Life's "true" motives for the rate increase, *id.* ¶¶ 29-34, are nothing but bare, rank conclusions that are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681. In short, Plaintiff alleges no facts from which the Court can reasonably infer that Wilco Life's motives were what she says they were—her allegations are merely *ipse dixit*. The federal pleading standard requires more. In *Iqbal*, for example, the Supreme Court refused to accept the plaintiff's allegations that the defendants subjected him to cruel and unusual punishment solely on account of his ethnicity, finding that plaintiff's allegations about the defendant's motives were not supported by any factual allegations. *Id.* at 680-81. There is no material difference between the allegations of motive in *Iqbal* and the allegations about Wilco Life's motives

17

here.  Plaintiff must allege something from which the Court can infer that Wilco Life actually had the motives she ascribes.

**2.     Plaintiff's Claim for Breach of Good Faith and Fair Dealing is Not Actionable as an Independent Cause of Action.**

Plaintiff also asserts a separate claim for breach of the implied duty of good faith and fair dealing.  That claim fails as a matter of law because breach of the duty of good faith and fair dealing is "not actionable as an independent cause of action" in Georgia.  *See Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1162 (M.D. Ga. 2005); *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001).  Although Georgia law imposes an implied duty of good faith and fair dealing in every contract, that duty "modifies, and becomes part of, the provisions of the contract itself."  *Stuart*, 555 S.E.2d at 884.  "[I]t is not an undertaking that can be breached apart from those terms."  *Alan's of Atlanta v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990).  As a result, and as numerous district courts have concluded, a claim for breach of the implied duty of good faith is "duplicative" of breach of contract and should be dismissed.  *E.g.*, *Garrett*, 427 F. Supp. 2d at 1162; *Alphastaff, Inc. v. Kronos Hotels, LLC*, 2008 WL 11336202, at *1 (N.D. Ga. Sept. 26, 2008).

<u>**CONCLUSION**</u>

Both the plain language of the policy and the commercial realities of life insurance make clear that Wilco Life was not limited to changing COI rates *only* in the face of changing mortality.  As a result, Anderson's complaint fails to state a claim upon which relief can be granted and should be dismissed.  Dismissal should be with prejudice and without leave to amend.  Any attempt by Plaintiff to refashion her claims would be futile

because she cannot allege anything additional or different that would give her an actionable claim.

Date: January 2, 2020.                    Respectfully submitted,

                                          /s/   *Taylor F. Brinkman*
                                          Elizabeth Campbell
                                          Georgia Bar No. 349249
                                          LOCKE LORD LLP
                                          Terminus 200, Suite 1200
                                          333 Piedmont Road NE
                                          Atlanta, GA 30305
                                          T: (404) 870-4679
                                          F: (404) 806-5679
                                          ecampbell@lockelord.com

                                          –and–

                                          Carl C. Scherz (pro hac vice)
                                          Taylor Brinkman (pro hac vice)
                                          Anna K. Finger (pro hac vice)
                                          LOCKE LORD LLP
                                          2200 Ross Avenue, Suite 2800
                                          Dallas, TX 75201
                                          T: (214) 274-8079
                                          F: (214) 740-8800
                                          cscherz@lockelord.com
                                          tbrinkman@lockelord.com
                                          anna.k.finger@lockelord.com

                                          **ATTORNEYS FOR WILCO LIFE
                                          INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I certify that on January 2, 2020, I filed this document using the Court's Electronic Case Filing ("ECF") system, which will automatically deliver a notice of electronic filing to Plaintiff's counsel of record, who are listed below.  Service of that notice of electronic filing constitutes service of this document as contemplated by Rule 5 of the Federal Rules of Civil Procedure.

R. Brent Irby                                    Lee W. Brigham
McCallum, Hoagland & Irby, LLP      Bell & Brigham
905 Montgomery Hwy, Suite 201       457 Greene Street, PO Box 1547
Vestavia Hills, AL 35216                    Augusta, GA 30903-1547
birby@mhcilaw.com                           lee@bellbrigham.com

*Attorney for Plaintiff*                          *Attorney for Plaintiff*


/s/    *Taylor F. Brinkman*

# EXHIBIT A

## CONSECO LIFE
## INSURANCE COMPANY
### CARMEL, INDIANA

### A STOCK COMPANY/HEREINAFTER CALLED THE COMPANY

11815 N. Pennsylvania Street, Carmel, Indiana  46032-4555
1-800-525-7662

This life insurance policy is a legal contract between the Company and the owner.

### PLEASE READ YOUR POLICY CAREFULLY

DUPLICATE

The Company will pay the proceeds as defined herein to the owner on the maturity date if the insured is living on that date. Upon receipt by the Company at its Administrative Offices of due proof that the insured died before the maturity date and while this policy is in force, the Company will immediately pay the proceeds to the beneficiary.

All payments are subject to all of the provisions of this and the following pages of this policy signed at the Company's Administrative Offices, Carmel, Indiana. This policy is issued in consideration of the application and payment of the initial premium.

### NOTICE OF 20 DAY RIGHT TO EXAMINE THE POLICY

Please carefully review this policy and the attached application. If you are dissatisfied for any reason, this policy will be cancelled by your delivering or mailing the policy to Conseco Life Insurance Company, 11815 N. Pennsylvania Street, Carmel, Indiana 46032-4555, or to the insurance agent through whom it was effected before midnight of the twentieth day after receipt of such policy by the applicant. Upon such delivery or mailing, the policy shall be void from the beginning. Return of the policy or contract by mail is effective on being postmarked, properly addressed and postage prepaid. The Company must return all payments made for this policy within ten days after it receives the returned policy.

Secretary

President

### FLEXIBLE PREMIUM
### ADJUSTABLE LIFE INSURANCE POLICY

ADJUSTABLE DEATH BENEFIT.  PROCEEDS PAYABLE UPON DEATH OF INSURED PRIOR TO THE MATURITY DATE.  FLEXIBLE PREMIUMS PAYABLE DURING THE LIFETIME OF THE INSURED UNTIL THE MATURITY DATE.
CASH VALUES MAY BE ENHANCED BY AN ACCUMULATION VALUE BONUS COMPUTED BY REFERENCE TO INDEX PERFORMANCE.
NONPARTICIPATING.

CLIC-3002

## ALPHABETICAL GUIDE

| | |
|---|---|
| Accumulation Value | 12 |
| Age | 7 |
| Amount and Frequency | 9 |
| Annual Report | 8 |
| Assignment | 6, 16 |
| Beneficiary | 6 |
| Beneficiary Change | 6 |
| Cash Value | 13 |
| Cash Surrender Value | 13 |
| Change in Death Benefit Option | 11 |
| Change in Specified Amount | 10 |
| Continuation of Insurance | 14 |
| Cost of Insurance | 12 |
| Cost of Insurance Rates | 13 |
| Date of Issue | 3 |
| Debt | 14 |
| Effective Date of Coverage | 8 |
| Election of Options | 15 |
| Elections, Designations, Changes and Requests | 7 |
| Eligible Fund | 11 |
| Entire Contract | 6 |
| Error in Age or Sex | 7 |
| Expense Charges | 5 |
| Grace Period | 9 |
| Incontestability | 7 |
| Initial Premium | 8 |
| Initial Specified Amount | 3 |
| Loan Interest | 14 |
| Loan Value | 14 |
| Maturity Date | 7 |
| Minimum Annual Premium | 8 |
| Monthly Deduction | 12 |
| Nonparticipating | 7 |
| Owner | 6 |
| Owner Change | 6 |
| Partial Withdrawals | 13 |
| Payment of Proceeds | 7 |
| Planned Periodic Premium | 8 |
| Policy Date | 3, 8 |
| Policy Loan | 14 |
| Premium Class | 7 |
| Proceeds | 7 |
| Projection of Benefits and Values | 8 |
| Qualifying Annual Premium | 8 |
| Reinstatement | 9 |
| Repayment | 15 |
| Rider Cost of Insurance Schedule | 3 |
| Simultaneous Death | 6 |
| Suicide Exclusion | 7 |
| Surrender | 13 |
| Surrender Charge | 13 |
| Table of Minimum Death Benefits | 5 |
| Table of Guaranteed Maximum Monthly Cost of Insurance Rates per $1,000 | 4 |
| Table of Surrender Charges | 5 |
| Termination | 8 |
| Termination of Policy | 15 |
| Unscheduled Premiums | 9 |
| Where Payable | 9 |

## POLICY PROVISIONS

| | |
|---|---|
| Death Benefit | 10 |
| Accumulation Value Bonus | 12 |
| General | 6–8 |
| Index Provisions | 11 |
| Loan | 14 |
| Nonforfeiture | 12 |
| Ownership, Beneficiary and Assignment | 6 |
| Policy Change | 10 |
| Premium Payments, Grace Period and Reinstatement | 8, 9 |
| Settlement Options | 15 |

DUPLICATE

## OPTIONAL BENEFITS

If you have purchased any optional benefits, they will be listed in the Rider Cost of Insurance Schedule section of a Policy Data Page and the benefit will be inserted in the contract.

## POLICY DATA PAGE

| | | | |
|---|---|---|---|
| INSURED | VANESSA HARRELL | 0701R04159 | POLICY NUMBER |
| AGE | 42 | DECEMBER 14, 2001 | DATE OF ISSUE |
| SEX | Female | $150,000 | INITIAL SPECIFIED AMOUNT |
| DEATH BENEFIT OPTION A | | $35.00 | PLANNED PERIODIC PREMIUM |
| MATURITY DATE | DECEMBER 14, 2059 | $459.00 | MINIMUM ANNUAL PREMIUM |
| POLICY DATE | DECEMBER 14, 2001 | $1,110.00 | QUALIFYING ANNUAL PREMIUM |
| MINIMUM INDEX FACTOR | 10% | Monthly | PREMIUM FREQUENCY |
| MAXIMUM INDEX FACTOR | 200% | 3.00% | GUARANTEED INTEREST RATE |
| PREMIUM CLASS NONSMOKER SELECT | | | |

INDEX        Standard and Poor's 500 Composite Stock Price Index.  We will not
             change the index without prior approval from the state of issue.
             Index Values do not include shareholder dividends.

## BENEFIT SCHEDULE

| FORM NUMBER | BENEFIT DESCRIPTION | INITIAL SPECIFIED AMOUNT | MONTHLY COST OF INSURANCE | FIRST MONTHLY DEDUCTION | LAST MONTHLY DEDUCTION |
|---|---|---|---|---|---|
| CLIC-3002 | FLEXIBLE PREMIUM ADJUSTABLE LIFE INS | 150,000 | SEE PAGE 4 | 12/14/2001 | 11/14/2059 |
| CLIC-6000 | EXTENSION OF MATURITY DATE RIDER | SEE RIDER | N/A | N/A | N/A |
| CLIC-6012 **20/30 YEAR DEATH BEN GUARANTEE RIDER | | N/A | N/A | N/A | N/A |
| CR-86 | CHILD RIDER | 10,000 | 5 00# | 12/14/2001 | 11/14/2024 |

IF ADDITIONAL BENEFITS/RIDERS ARE PRESENT, THE MONTHLY COST OF BENEFITS MAY
VARY - SEE ADDITIONAL BENEFITS/RIDERS PAGE

\# THE MONTHLY COST OF INSURANCE RATE
**SEE THE GUARANTEED PREMIUMS SCHEDULE, WHICH SHOWS THE LEVEL OF PREMIUM
   WHICH MUST BE PAID REGARDLESS OF THE CREDIT INTEREST OF THIS POLICY

"STANDARD & POOR'S 500" IS A TRADEMARK OF THE MCGRAW-HILL COMPANIES, INC ,
AND HAS BEEN LICENSED FOR USE BY CONSECO SERVICES, L.L.C  AND ITS AFFILIATES
THE PRODUCT IS NOT SPONSORED, ENDORSED, SOLD OR PROMOTED BY STANDARD & POOR'S
AND STANDARD & POOR'S MAKES NO REPRESENTATION REGARDING THE ADVISABILITY OF
PURCHASING THE PRODUCT.
CLIC-3002-GA                      3A

ADDITIONAL BENEFITS/RIDERS

| BENEFIT | BENEFIT AMOUNT | PREMIUM PAYING PERIOD (YEARS) |
|---|---|---|
| (1) CHILD RIDER | $10000 | 23 |

REPRESENTATIVE ANNUAL
COST OF INSURANCE

| POLICY YEAR | CR86 (1) |
|---|---|
| 01 | 60.00 |
| 02 | 60.00 |
| 03 | 60.00 |
| 04 | 60.00 |
| 05 | 60 00 |
| 06 | 60 00 |
| 07 | 60.00 |
| 08 | 60.00 |
| 09 | 60.00 |
| 10 | 60.00 |
| 11 | 60.00 |
| 12 | 60 00 |
| 13 | 60.00 |
| 14 | 60.00 |
| 15 | 60.00 |
| 16 | 60.00 |
| 17 | 60.00 |
| 18 | 60.00 |
| 19 | 60.00 |
| 20 | 60.00 |
| AGE 60 | 60.00 |
| AGE 62 | 60.00 |
| AGE 65 | 0.00 |

CLIC-3002-GA                    3B

POLICY DATA PAGE
TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
PER $1,000

| ATTAINED AGE | POLICY YEAR | RATE | ATTAINED AGE | POLICY YEAR | | RATE |
|---|---|---|---|---|---|---|
| 42 | 01 | 07010 | 71 | 30 | | 2 05420 |
| 43 | 02 | .08300 | 72 | 31 | | 2.29830 |
| 44 | 03 | .09680 | 73 | 32 | | 2.59080 |
| 45 | 04 | .11180 | 74 | 33 | | 2 92750 |
| 46 | 05 | .12640 | 75 | 34 | | 3.30330 |
| 47 | 06 | .29420 | 76 | 35 | | 3.71000 |
| 48 | 07 | 31420 | 77 | 36 | | 4.14580 |
| 49 | 08 | .33670 | 78 | 37 | | 4.61750 |
| 50 | 09 | 36170 | 79 | 38 | | 5.14000 |
| 51 | 10 | .38920 | 80 | 39 | | 5 73420 |
| 52 | 11 | .42080 | 81 | 40 | | 6.41750 |
| 53 | 12 | .45580 | 82 | 41 | | 7.20500 |
| 54 | 13 | .49170 | 83 | 42 | | 8.09330 |
| 55 | 14 | .53000 | 84 | 43 | | 9 07250 |
| 56 | 15 | 56830 | 85 | 44 | | 10.13170 |
| 57 | 16 | 60580 | 86 | 45 | | 11 26330 |
| 58 | 17 | .64330 | 87 | 46 | | 12.46580 |
| 59 | 18 | .68580 | 88 | 47 | | 13.74000 |
| 60 | 19 | .73580 | 89 | 48 | | 15.09580 |
| 61 | 20 | 79750 | 90 | 49 | | 16.54420 |
| 62 | 21 | .87420 | 91 | 50 | | 18.11830 |
| 63 | 22 | .96830 | 92 | 51 | | 19.87750 |
| 64 | 23 | 1.07420 | 93 | 52 | | 21.94580 |
| 65 | 24 | 1 18830 | 94 | 53 | | 24 60250 |
| 66 | 25 | 1.30670 | 95 | 54 | | 28.41830 |
| 67 | 26 | 1 42750 | 96 | 55 | | 34 49000 |
| 68 | 27 | 1.55250 | 97 | 56 | | 44.77000 |
| 69 | 28 | 1.69170 | 98 | 57 | | 61 99670 |
| 70 | 29 | 1.85500 | 99 | 58 | | 83.33330 |

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONER'S 1980
STANDARD ORDINARY MALE MORTALITY TABLE, AGE LAST BIRTHDAY.   ACTUAL MONTHLY COST
OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY BASED ON THE POLICY COST
FACTORS DESCRIBED IN YOUR POLICY.   HOWEVER, THE ACTUAL COST OF INSURANCE RATES
WILL NOT BE GREATER THAN THOSE SHOWN ABOVE

CLIC-3002                                        4

POLICY DATA PAGE
(CONTINUED)
TABLE OF MINIMUM DEATH BENEFITS

| ATTAINED AGE | PERCENT OF ACCUMULATION ACCOUNT | ATTAINED AGE | PERCENT OF ACCUMULATION ACCOUNT |
|---|---|---|---|
| 0-40 | 250% | 65 | 120% |
| 45 | 215% | 70 | 115% |
| 50 | 185% | 75 | 105% |
| 55 | 150% | 90 | 105% |
| 60 | 130% | 95 AND OVER | 100% |

FOR AGES NOT SHOWN, THE APPLICABLE PERCENTAGE WILL BE DETERMINED BY REDUCING
PROPORTIONATELY BETWEEN THE AGES THAT ARE SHOWN.

EXPENSE CHARGES

THERE IS AN EXPENSE CHARGE OF $7.50 PER MONTH PER POLICY FOR ALL POLICY YEARS

THERE IS AN EXPENSE CHARGE OF     $0.06     PER MONTH FOR EACH $1,000 OF
INITIAL SPECIFIED AMOUNT IN ALL POLICY YEARS.

DURING THE FIRST POLICY YEAR, THE PREMIUM EXPENSE CHARGE IS 50% OF THE PREMIUMS
PAID TO THE COMPANY UP TO THE QUALIFYING ANNUAL PREMIUM AND 2% OF THE PREMIUMS
PAID TO THE COMPANY IN EXCESS OF THE QUALIFYING ANNUAL PREMIUM. AFTER THE FIRST
POLICY YEAR, THE PREMIUM EXPENSE CHARGE IS 2% OF ALL PREMIUM PAID TO THE COMPANY

TABLE OF SURRENDER CHARGES

| YEAR | SURRENDER CHARGE | YEAR | SURRENDER CHARGE |
|---|---|---|---|
| 1 | $3,150.00 | 9 | $2,100 00 |
| 2 | $3,150.00 | 10 | $1,837 50 |
| 3 | $3,150.00 | 11 | $1,575.00 |
| 4 | $3,150.00 | 12 | $1,260.00 |
| 5 | $3,150.00 | 13 | $945.00 |
| 6 | $2,887.50 | 14 | $630.00 |
| 7 | $2,625.00 | 15 | $315.00 |
| 8 | $2,362.50 | 16 AND OVER | $0 00 |

EACH PARTIAL WITHDRAWAL IS SUBJECT TO A $25 00 TRANSACTION CHARGE.   IN
ADDITION, A PRO RATA SURRENDER CHARGE WILL BE IMPOSED ON PARTIAL WITHDRAWALS
IF THE EFFECT OF SUCH PARTIAL WITHDRAWAL IS TO REDUCE THE SPECIFIED AMOUNT.
THE AMOUNT OF THE PRO RATA SURRENDER CHARGE WILL BE BASED UPON THE PERCENTAGE
OF REDUCTION IN THE SPECIFIED AMOUNT.

NOTE:   AT SOME FUTURE TIME, THE POLICY CASH VALUE LESS DEBT MAY NOT COVER THE
NEXT MONTHLY DEDUCTION.   IN SUCH A SITUATION, THE POLICY WILL ENTER THE GRACE
PERIOD AND WILL TERMINATE AT THE END OF THAT PERIOD IF SUFFICIENT PREMIUM TO
COVER THE MONTHLY DEDUCTION IS NOT PAID.   SEE MINIMUM ANNUAL PREMIUM PROVISION.

CLIC-3002                                  5

## OWNER, BENEFICIARY AND ASSIGNMENT PROVISIONS

### OWNER
The owner means the owner specified in the application unless subsequently changed. During the insured's lifetime, the owner has the right to receive every benefit, exercise every right and enjoy every privilege granted by this policy. If the owner of this policy is a trust, proof of the existence of the trust must be furnished to the Company.

### BENEFICIARY
The beneficiary named in the application will receive the proceeds upon death of the insured before the maturity date and while this policy is in force, unless the beneficiary has been changed by the owner.

If more than one person is named as beneficiary, the proceeds will be paid in equal shares to the surviving beneficiaries, unless otherwise provided. If no beneficiary or contingent beneficiary survives the insured, the death benefit proceeds will be paid to the owner or the owner's estate.

If the beneficiary is "children," this means children born to or legally adopted by the insured.

DUPLICATE

### OWNER AND BENEFICIARY CHANGE
The owner may change the owner and the beneficiary at any time during the lifetime of the insured unless otherwise provided in a previous designation. Any change must be in written form satisfactory to the Company.

The change will take effect on the date the request is signed, but will not apply to any payments made by the Company before the request is received and recorded by the Company.

### SIMULTANEOUS DEATH
If any beneficiary dies within 15 days after the death of the insured, the proceeds will be paid as if the beneficiary died before such insured. However, this provision will not apply to any payment the Company makes before receiving and recording notice of the beneficiary's death.

### ASSIGNMENT
This policy may be assigned. No assignment will be recognized by the Company unless: (i) the original instrument or a certified copy is filed with the Company at its Administrative Offices; and (ii) the Company sends the owner an acknowledged copy. The Company will not be responsible for the validity of any assignment.

The claim of any assignee is subordinate to that of the Company, including any debt to the Company.

The rights of the beneficiary and owner are subject to the rights of any assignee.

## GENERAL PROVISIONS

### ENTIRE CONTRACT
This policy, including any attached riders, and the attached copy of the application and any supplemental applications for additional coverage, is the entire contract. This policy cannot be changed or any of its provisions waived, including any extension of time to pay premiums, except by the President, Vice President, or Secretary. Any changes, modifications, or waivers must be in writing.

All statements made in an application are assumed to be representations and not warranties. No statement will be used to terminate this policy or defend against a claim unless it is contained in the application or a supplemental application.

NO AGENT HAS AUTHORITY TO WAIVE A COMPLETE ANSWER TO ANY QUESTION ON THE APPLICATION, PASS ON INSURABILITY, MAKE OR ALTER ANY CONTRACT OR WAIVE ANY OF THE COMPANY'S OTHER RIGHTS OR REQUIREMENTS.

6

CLIC-3002

## INCONTESTABILITY

This policy will be incontestable after it has been in force during the lifetime of the insured for two years from the date of issue except for nonpayment of premiums.

Any requested additional benefit or specified amount issued after the date of issue or a specified amount which is not reduced following a partial withdrawal due to evidence of insurability approved after the date of issue will be incontestable only after such additional benefit has been in force for two years during the lifetime of the insured following the effective date of such additional coverage.

## PROCEEDS

Proceeds means the amount payable on the maturity date, or upon surrender of this policy prior to the maturity date, or upon the death of the insured before the maturity date and while this policy is in force.

The proceeds payable upon the death of the insured will be the death benefit less any debt.

If the policy is surrendered the proceeds will be the cash surrender value. On the maturity date the proceeds will be the cash surrender value.

## PAYMENT OF PROCEEDS

The proceeds are subject first to any debt to the Company and then to the interest of any assignee of record or as otherwise required by law. Payments to satisfy any debt to the Company and any assignee will be paid in a lump sum to each.

## PREMIUM CLASS

The insured's premium class is shown on a Policy Data Page.

## AGE

Age means age last birthday.

## ERROR IN AGE OR SEX

If the age or sex of the insured has been misstated, the specified amount payable will be changed to that which the most recent monthly deduction would have purchased at the correct age and sex.

## SUICIDE EXCLUSION

If the insured commits suicide while sane or insane within two years after the date of issue, the amount payable by the Company will be limited to the premiums paid prior to the insured's death less any debt, and less any partial withdrawals.

If the insured commits suicide while sane or insane within two years after the effective date of any requested additional coverage, the amount payable by the Company will be limited to premiums paid prior to the insured's death for such additional coverage less any debt and less any partial withdrawals.

## ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS

All elections, designations, changes and requests must be in a written form satisfactory to the Company and approved by the Company at its Administrative Offices.

## NONPARTICIPATING

This is a nonparticipating policy. This policy will not share in any of the Company's profits or surplus earnings. The Company will not pay dividends on this policy.

## MATURITY DATE

The maturity date is shown on a Policy Data Page. It is the date on which insurance coverage will terminate, no more premiums may be paid, and the cash surrender value is paid to the owner. It is possible that coverage will terminate prior to the maturity date if the premiums paid and interest credited are not sufficient coverage to such date.

· 7 ·

CLIC-3002

## ANNUAL REPORT

At least once a year, the Company will send the owner a report which shows premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, cash surrender value, Equity Bonus, and all charges since the last report.

## PROJECTION OF BENEFITS AND VALUES

The Company will provide a projection of future death benefits and the Accumulation Value at any time upon written request and payment of a service fee not to exceed $25.00. The fee payable will be the one then in effect for this service. The projection will be based on:

1.     Assumptions as to specified amounts, type of coverage option and future premium payments as may be specified by the owner; and
2.     Such other assumptions as are necessary and specified by the Company and/or owner.

## EFFECTIVE DATE OF COVERAGE

The effective date of coverage under this policy is as follows:

1.     The Date of Issue specified on Page 3 of this policy is the effective date for all coverage provided in the original application.
2.     The effective date for any addition to coverage will be the monthly anniversary date on or next following the date the application for the addition is approved by the Company at its Administrative Offices.

## TERMINATION

This policy will terminate when any one of the following events occur:

1.     The owner requests that coverage terminate;
2.     The insured dies;
3.     The policy matures;
4.     The grace period ends without payment of the required premiums;
5.     The total debt equals or exceeds the cash value.

DUPLICATE

## POLICY DATE

Policy years and policy anniversaries are computed from the policy date.

## PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS

### INITIAL PREMIUM

The initial premium is the premium due on the policy date. The initial premium cannot be less than one twelfth of the minimum annual premium.

### PLANNED PERIODIC PREMIUM

The planned periodic premium is shown on the Policy Data Page.

### QUALIFYING ANNUAL PREMIUM

The qualifying annual premium for this policy is shown on a Policy Data Page.

### MINIMUM ANNUAL PREMIUM

This policy will not lapse during the first three policy years, if on each monthly anniversary date during this period (i) is greater than or equal to (ii), where (i) is the sum of all premiums paid to date minus any policy loans and minus any partial withdrawals; and (ii) is one twelfth (1/12) of the minimum annual premium shown on a Policy Data Page, multiplied by the number of months elapsed since the policy date of this policy, including the month following the monthly anniversary date.

8

## WHERE PAYABLE

The first premium is payable in advance to the Company at its Administrative Offices or through an authorized representative of the Company. Any check or money order should be made payable only to the Company and not to any representative. After the first premium, all premiums are to be paid to the Company at its Administrative Office. Receipts will be furnished on request.

## AMOUNT AND FREQUENCY

The owner may change the amount of planned periodic premium. The Company reserves the right to limit the amount of any increase.

The frequency of premium payment shown on a Policy Data Page will serve only as an indication of the owner's preference as to probable future frequency of payment. The owner may change the frequency of planned periodic premium payment at any time.

A check or draft given for all or any part of a premium, unless paid upon its presentation to the bank or person drawn on, shall not be considered as valid payment.

## UNSCHEDULED PREMIUMS

Additional premiums, but not less than $25.00, may be paid at any time before the maturity date. The Company reserves the right to limit the number and amount of additional premium payments.

Section 7702 of the Internal Revenue Code, as amended, limits the amount of premium payable under this policy for the death benefit to qualify for exclusion from income. If a premium in excess of that premium limitation is received, the excess amount plus interest earned and allocable to such amount will be refunded to the owner.

When a change is made under the Policy Change provision of this policy, the premium limitation will be adjusted in accordance with the change.

## GRACE PERIOD

If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction. The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. The cash surrender value and the monthly deductions are described in the Nonforfeiture provision of this policy. If the insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds. The policy will remain in force during the grace period, unless surrendered.

See Minimum Annual Premium section above for the method of avoiding lapsation of the policy during the first three years.

## REINSTATEMENT

Subject to meeting the following requirements, the policy may be reinstated within five years after the effective date of lapse and before the maturity date, unless it was surrendered for cash. The requirements for reinstatement are:

1. Evidence of insurability of the insured satisfactory to the Company must be submitted;
2. Premium sufficient to pay any past due monthly deductions at the end of the grace period must be paid;
3. Minimum premium sufficient to keep the policy in force for two months at time of reinstatement must be paid; and
4. Any debt existing at the end of the grace period must be paid or reinstated at the policy loan interest rate.

Monthly deductions will not be due for the period of time between the end of the grace period and the date of reinstatement.

The effective date of reinstatement will be the date the application for reinstatement is approved by the Company at its Administrative Offices.

Upon reinstatement, surrender charges, if any, will then be reinstated in the amount shown on a Policy Data Page for the policy year of lapse. Such surrender charges will be the same as if the policy had not lapsed.

CLIC-3002                                                                 9

The Incontestability section will apply if the policy has been in force for less than two years. Statements made in the reinstatement application will be contestable for a period of two years from the effective date of reinstatement.

If the insured commits suicide while sane or insane within two years after the effective date of reinstatement the amount payable by the Company will be limited to premiums paid prior to the insured's death less any debt and less any partial withdrawals.

## DEATH BENEFIT PROVISION

This policy will provide one of the following death benefits in determining the proceeds of the policy:

1.   Option A.   The death benefit will be the greater of:

     a.   The specified amount on the date of death, or
     b.   The Accumulation Value on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

2.   Option B.   The death benefit will be the greater of:

     a.   The Accumulation Value on the date of death, plus the specified amount on the date of death, or
     b.   The Accumulation Value on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

The death benefit option in effect on the date of issue is shown on a Policy Data Page.

DUPLICATE

## POLICY CHANGE PROVISIONS

### CHANGE IN SPECIFIED AMOUNT

At any time after the first policy year, upon written request, the specified amount may be changed, subject to the following conditions:

1.   Specified Amount Decrease

     a.   Any decrease will be effective on the monthly anniversary day on or next following receipt of the request by the Company. A supplemental Policy Data Page which reflects the decrease will be furnished by the Company to the owner.  A decrease will be applied in the following order.

          1)   First, against any increase in the specified amount (beginning with the most recent) and, then;
          2)   Against the initial specified amount.

     b.   The specified amount remaining in force after any requested decrease may not be less than $10,000.

     c.   A pro rata surrender charge will be deducted from the accumulation value.   Such pro rata charge will be calculated by determining what percent of the initial specified amount is represented  by the decrease then applying that percentage to the original surrender charge as the pro rata surrender    charge. Future surrender charges will be reduced by the same percentage as determined for each such decrease.

     d.   If a decrease in the specified amount is made in the second or third policy year, the minimum annual premium will not be reduced.

2.   Specified Amount Increase

     a.   Any increase approved by the Company will be effective on the date shown on a supplemental Policy Data Page. New Surrender Charges and Expense Loads may apply and will be reflected on the Supplemental Policy Data Page.

CLIC-3002

b. A supplemental application must be submitted.
c. Evidence of insurability of the insured satisfactory to the Company must be submitted.
d. The first month's Monthly Deduction must be paid.

## CHANGE IN DEATH BENEFIT OPTION
If the death benefit is Option B, it may be changed to Option A. The new specified amount will be the death benefit as of the effective date of change. If the death benefit Option is A, it may be changed to Option B. Evidence of insurability of the insured satisfactory to the Company must be submitted. The new specified amount will be the death benefit less the value of the accumulation value as of the effective date of change.

The effective date of change will be the monthly anniversary day on or next following the date the Company receives the request for change.

The death benefit option may not be changed if:

1. Such change will result in a specified amount below $10,000; or
2. After such change the policy would not qualify as a life insurance policy as defined at the date of change by Federal law or regulation.

No change may be made during the first policy year.

## INDEX PROVISIONS

### INDEX PERIOD
An Index Period is a one-year period beginning on each Premium Processing Date or each Premium Anniversary Date.

Premium Processing Date: Date when we apply your premium.

Premium Anniversary Date: Anniversary of the Premium Processing Date.

### ELIGIBLE FUND
The Eligible Fund is the fund associated with each Index Period and each Premium. Each Eligible Fund will be calculated as the interest credited to the values associated with the Premium during each Index Period divided by the Guaranteed Interest Rate.

The Eligible Fund will be reduced by any partial withdrawals and applicable charges or policy loans and applicable unpaid loan interest.

Interest credited on loaned amounts are excluded from the Eligible Fund calculations.

The Eligible Fund can never be less than zero.

### INDEX FACTOR
The Index Factor is a percentage which will be declared by the Company. Once declared, it will be guaranteed for the Index Period.

Each premium payment will be associated with its unique Premium Processing Date, Premium Anniversary Date, Eligible Fund, Accumulation Value Bonus and Index Factor.

DUPLICATE

11

CLIC-3002

## NONFORFEITURE PROVISION

### ACCUMULATION VALUE

The Accumulation Value on the policy date will be the initial net premium. The Accumulation Value on any other day will be calculated as (a) plus (b) plus (c) minus (d) minus (e) where:

    a. Accumulation Value on the preceding monthly anniversary day plus interest;
    b. Accumulation Value Bonus plus interest;
    c. Net premiums paid since the preceding monthly anniversary day plus interest;
    d. Partial withdrawals made since the preceding monthly anniversary day plus associated charges if any, plus interest from the date of withdrawal;
    e. Monthly deduction on the preceding monthly anniversary day plus interest.

The policy date will be considered as the preceding monthly anniversary day for purposes of calculating the Accumulation Value during the first month after the policy is issued.

Net premium is the premium paid less the percentage of premium expense charge shown on the Policy Data Page.

On each Premium Anniversary Date, an Accumulation Value Bonus may be credited to the Accumulation Value depending upon the performance of the Index.

DUPLICATE

### ACCUMULATION VALUE BONUS

Each Accumulation Value Bonus will be calculated as:

    (1) The Index Factor associated with the specific premium; multiplied by
    (2) The average of the twelve monthly index values, divided by the index value at the beginning of the Index Period, minus one, less
    (3) The Guaranteed Interest Rate; multiplied by
    (4) The Eligible Fund.

The Accumulation Value Bonus can never be less than zero.

The Index Value on any date is the value of the Index at the close of business on the preceding day. If the Index is not available for any date, the value of the Index at the close of business on the first preceding date for which the Index is available will be used.

The monthly index values are the Index Values on the monthly anniversaries during the Index Period associated with the premium.

### MONTHLY DEDUCTION

The monthly deduction for a policy month will be calculated as (a) plus (b) where:

    a. Cost of insurance plus the cost of additional benefits provided by rider for the policy month; and
    b. Monthly expense charges as shown on a Policy Data Page.

### COST OF INSURANCE

The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:

    a. Monthly cost of insurance rate as described in the Cost of Insurance Rates section;
    b. Insured's death benefit at the beginning of the policy month divided by 1.0024663;
    c. Accumulation Value at the beginning of the the policy month.

Divide the result by $1,000.

The monthly cost of insurance for any optional benefits specified in a rider is shown in the Cost of Insurance Schedule section of a Policy Data Page.

12

CLIC-3002

## COST OF INSURANCE RATES

The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue. Attained age means age on the prior policy anniversary except when this policy is issued when it means age last birthday prior to policy date. These rates are shown on a Policy Data Page.

Current monthly cost of insurance rates will be determined by the Company. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

The monthly cost of insurance rate for any rider is shown or referred to in the Cost of Insurance Schedule section of a Policy Data Page.

## CASH VALUE

The cash value of this policy is:

1.   Accumulation Value; less
2.   Surrender charge.

## CASH SURRENDER VALUE

The cash surrender value of this policy is:

1.   Cash value; less
2.   Any debt.

## SURRENDER CHARGE

The surrender charge, which is shown on a Policy Data Page, is a charge against the Accumulation Value for surrender of the policy, or partial withdrawal from the policy. It is not applicable to the surrender of a rider attached to the policy.

## SURRENDER

The owner may surrender this policy for its cash surrender value at any time before the policy terminates.

The Company may defer payment for not more than six months following receipt by the Company of the surrender request unless the surrender is to be applied to pay premiums on policies with the Company.

## PARTIAL WITHDRAWALS

Partial withdrawals may be made from the Accumulation Value after this policy has been in force for one year. No more than one partial withdrawal may be made in any policy year. The minimum partial withdrawal which may be made is five hundred dollars. The amount which may be withdrawn may not exceed the cash surrender value. The specified amount will be reduced by the amount of the withdrawal if death benefit Option A is in effect.

If death benefit Option A is in effect, a pro rata surrender charge will be imposed against the Accumulation Value. The amount of this charge will be based upon the percentage of reduction in the Specified Amount, calculated by determining what percent of the initial specified amount is represented by the partial withdrawal then applying that percentage to the original surrender charge as the pro rata surrender charge. Future surrender charges will also be reduced by the same percentage as determined for each such decrease. A $25.00 administrative charge will also be imposed against the Accumulation Value.

Subject to evidence of insurability of the insured satisfactory to the Company, the specified amount will not be reduced by the amount of a partial withdrawal. In such a case, a charge of only twenty-five ($25.00) will be imposed against the Accumulation Value.

CLIC-3002

13

If death benefit Option B is in effect, no pro rata surrender charge will be imposed; however, there will be a $25.00 administrative charge.

The Eligible Fund will be reduced by any partial surrenders and applicable charges.

## CONTINUATION OF INSURANCE
If you stop paying premium or you pay insufficient premiums so that the cash surrender value is not sufficient to cover the next monthly deduction, the insurance on all insureds will continue, subject to the Grace Period provision, until the earlier of:

1. Monthly anniversary day on which the cash surrender value will not cover the monthly deduction for the following month; or
2. Maturity Date.

The nonforfeiture values for this policy are equal to or greater than those required by law. The nonforfeiture values are calculated in accordance with the Standard Nonforfeiture Law. A detailed statement of the method of computing values has been filed with the insurance supervisory official of the state of issue.

## LOAN PROVISION

### POLICY LOAN
The owner may obtain a loan at any time while this policy is in force and on the sole security thereof.

The Eligible Fund will be reduced by any policy loans and any applicable unpaid loan interest.

### LOAN VALUE
The loan value may not exceed the cash surrender value of the policy.

DUPLICATE

The Company may defer making a loan for not more than six months after application for the loan is made unless the loan is to pay premiums on policies with the Company.

### DEBT
Debt means all existing loans on this policy plus earned accrued loan interest.

### LOAN INTEREST
Loan interest will accrue from the date of each loan to the next policy anniversary date. Loan interest is payable in arrears at the end of each policy year. If interest is not paid when due, the amount of the interest will be added to the loan and bear interest on the same terms as the loan. The amount which may be borrowed is that amount which, with interest to the next policy anniversary, will equal the cash surrender value as of the next policy anniversary. Except as provided below, a loan secured by this policy will bear interest at the rate of 5% per year.

After this policy has been in force continuously for a specified period, the owner will be eligible for a loan at a reduced rate of 3.0%. The specified period is:

a. Ten years if the insured's issue age is 55 or less;
b. Policy anniversary following the insured's 65th birthday if the insured's issue age is between 55 and 60, and
c. Five years if the insured's issue age is 60 or over.

14

CLIC-3002

This reduced loan interest rate is available subject to the following conditions:

1. The maximum amount which may be loaned during any one policy year at this reduced interest rate may not exceed the greater of:

   a. 15% of the policy's cash surrender value at the end of the prior policy year; or
   b. 15% of the cash surrender value on the policy anniversary immediately prior to the first loan exercised under this provision.

The amount in excess of the amounts permitted under 1 above during any one policy year will bear interest at an interest rate of 5% per year.

**REPAYMENT**
A loan may be repaid at any time while this polciy is in force. A loan that exists at the end of the grace period may not be repaid unless this policy is reinstated.

**TERMINATION OF POLICY**
At any time the total debt equals or exceeds the cash value, the policy will terminate without further value or benefit.

At least 31 days before the policy terminates, the Company will send a notice of its intention to terminate the policy. Notice will be mailed to the last known addresses of the owner and to any assignee of record.

## SETTLEMENT OPTIONS PROVISION

**ELECTION OF OPTIONS**
Any amount payable at the death of the insured or any other termination of this policy will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any settlement option.

Payment under a combination of options, or payment to joint or successive payees, or payment to a beneficiary that is not a natural person may be elected only with the consent of the Company.

Any election must be made in writing to the Company. The Company may require the policy for endorsement.

**ELECTION BY OWNER**
During the lifetime of the insured, the owner may elect to have the proceeds paid under one of the payment options in this policy.

**ELECTION BY BENEFICIARY**
At the time proceeds are payable to the beneficiary, the beneficiary may elect one of the payment options if proceeds are available to the beneficiary in a lump sum. The beneficiary has 12 months after payment becomes due to elect one of the following options.

**PAYMENTS**                                        DUPLICATE
Payments will be made monthly unless otherwise elected.

The Company has the right to change the frequency of payments in order to make a periodic payment of at least $25.00.

The option date under Options 1, 2 and 3 is the date the proceeds are payable or the date of election, whichever is later. Interest under Option 4 will accrue from such date.

Under Option 3, proof of the age of the payee will be required at the time the first payment is due. The Company reserves the right to require proof that the payee is alive at the time of each payment.

15

CLIC-3002

## CHANGE IN PAYMENTS

Partial withdrawal under Options 1 and 2 may not be made. All payments under Options 1 and 2 may be paid in one sum only with the consent of the Company. The value of any one sum payment will be the sum of any remaining guaranteed payments discounted at the interest rate used to calculate such payment.

Payments under Option 3 will be commuted only in event of death of the payee. Any payments that remain to be paid under Option 3 at the death of the payee will be paid in one sum. The value of the one sum payment will be the sum of the remaining guaranteed payments, discounted at the interest rate used to calculate such payment.

## WITHDRAWAL

The minimum proceeds that may be applied under Option 4 is $1,000. The minimum proceeds that may remain after a withdrawal under Option 4 is $1,000. The minimum amount that may be withdrawn is $1,000. Proceeds less than this amount will be paid in a lump sum to the payee.

The Company may postpone payment of any amount to be withdrawn for not more than six months from the date the written request for withdrawal is received in the Company's Administrative Offices.

## ASSIGNMENT

The proceeds payable under one of these options may not be assigned.

DUPLICATE

## ADDITIONAL INTEREST

Additional interest, if any, paid over the guaranteed 3% will be in an amount and by a method determined by the Company.

## BASIS OF VALUES

Minimum income rates are based on the 1983 Individual Annuity Mortality Table Improvement Scale G. Interest is assumed at the rate of 3% per year.

16

CLIC-3002

## OPTION 1. EQUAL PAYMENTS FOR A GUARANTEED PERIOD

Equal monthly payments for the number of years elected, not to exceed 25 years. Payments will begin on the option date.

### Guaranteed Minimum Payment for each $1,000 of net proceeds

### Guaranteed Interest rate: 3.00%

| ANNUAL YEARS | ANNUAL | SEMI ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|---|
| 1 | $1,000.00 | $503.69 | $252.78 | $84.47 |
| 2 | 507.39 | 255.47 | 128.26 | 42.86 |
| 3 | 343.23 | 172.88 | 86.76 | 28.99 |
| 4 | 261.19 | 131.56 | 66.02 | 22.06 |
| 5 | 211.99 | 106.78 | 53.59 | 17.91 |
| 6 | 179.22 | 90.27 | 45.30 | 15.14 |
| 7 | 155.83 | 78.49 | 39.39 | 13.16 |
| 8 | 138.31 | 69.66 | 34.96 | 11.68 |
| 9 | 124.69 | 62.81 | 31.52 | 10.53 |
| 10 | 113.82 | 57.33 | 28.77 | 9.61 |
| 11 | 104.93 | 52.85 | 26.52 | 8.86 |
| 12 | 97.54 | 49.13 | 24.65 | 8.24 |
| 13 | 91.29 | 45.98 | 23.08 | 7.71 |
| 14 | 85.95 | 43.29 | 21.73 | 7.26 |
| 15 | 81.33 | 40.96 | 20.56 | 6.87 |
| 16 | 77.29 | 38.93 | 19.54 | 6.53 |
| 17 | 73.74 | 37.14 | 18.64 | 6.23 |
| 18 | 70.59 | 35.56 | 17.84 | 5.96 |
| 19 | 67.78 | 34.14 | 17.13 | 5.73 |
| 20 | 65.26 | 32.87 | 16.50 | 5.51 |
| 21 | 62.98 | 31.72 | 15.92 | 5.32 |
| 22 | 60.92 | 30.68 | 15.40 | 5.15 |
| 23 | 59.04 | 29.74 | 14.92 | 4.99 |
| 24 | 57.33 | 28.88 | 14.49 | 4.84 |
| 25 | 55.76 | 28.08 | 14.09 | 4.71 |
| 26 | 54.31 | 27.36 | 13.73 | 4.59 |
| 27 | 52.97 | 26.68 | 13.39 | 4.47 |
| 28 | 51.74 | 26.06 | 13.08 | 4.37 |
| 29 | 50.60 | 25.49 | 12.79 | 4.27 |
| 30 | 49.53 | 24.95 | 12.52 | 4.18 |

DUPLICATE

## OPTION 2. EQUAL PAYMENTS OF A SPECIFIED AMOUNT

Equal monthly payments of at least $4.71 per month for each $1,000 of proceeds. Payments will begin on the option date and will continue until the proceeds and interest at the rate of 3.00% compounded annually are exhausted.

17

CLIC-3002

## OPTION 3. EQUAL PAYMENTS FOR LIFE

Equal monthly payments for a guaranteed period of 10, 15, or 20 years as elected and for life thereafter as shown in the table below. Amount of each monthly installment per $1,000 net proceeds. Amounts based on 1983 IAM Table with improvement scale G and 3% per year.

### MALE

| Age of Payee | Monthly Income for Life with Guaranteed Period of: | | | Age of Payee | Monthly Income for Life with Guaranteed Period of: | | |
|---|---|---|---|---|---|---|---|
| | 10 Years | 15 Years | 20 Years | | 10 Years | 15 Years | 20 Years |
| 25 | $3.07 | $3.07 | $3.06 | 55 | $4.38 | $4.31 | $4.21 |
| 26 | 3.09 | 3.09 | 3.08 | 56 | 4.46 | 4.38 | 4.27 |
| 27 | 3.11 | 3.11 | 3.10 | 57 | 4.55 | 4.46 | 4.34 |
| 28 | 3.14 | 3.13 | 3.13 | 58 | 4.64 | 4.54 | 4.40 |
| 29 | 3.16 | 3.16 | 3.15 | 59 | 4.73 | 4.63 | 4.46 |
| 30 | 3.18 | 3.18 | 3.17 | 60 | 4.84 | 4.71 | 4.53 |
| 31 | 3.21 | 3.21 | 3.20 | 61 | 4.94 | 4.80 | 4.60 |
| 32 | 3.24 | 3.23 | 3.23 | 62 | 5.06 | 4.89 | 4.66 |
| 33 | 3.27 | 3.26 | 3.25 | 63 | 5.18 | 4.99 | 4.73 |
| 34 | 3.30 | 3.29 | 3.28 | 64 | 5.30 | 5.09 | 4.79 |
| 35 | 3.33 | 3.32 | 3.31 | 65 | 5.43 | 5.18 | 4.86 |
| 36 | 3.36 | 3.35 | 3.34 | 66 | 5.57 | 5.28 | 4.92 |
| 37 | 3.40 | 3.39 | 3.37 | 67 | 5.71 | 5.39 | 4.98 |
| 38 | 3.43 | 3.42 | 3.41 | 68 | 5.85 | 5.49 | 5.04 |
| 39 | 3.47 | 3.46 | 3.44 | 69 | 6.01 | 5.59 | 5.09 |
| 40 | 3.51 | 3.50 | 3.48 | 70 | 6.16 | 5.69 | 5.14 |
| 41 | 3.55 | 3.54 | 3.52 | 71 | 6.33 | 5.79 | 5.19 |
| 42 | 3.66 | 3.58 | 3.56 | 72 | 6.49 | 5.89 | 5.24 |
| 43 | 3.64 | 3.62 | 3.60 | 73 | 6.66 | 5.98 | 5.28 |
| 44 | 3.69 | 3.67 | 3.64 | 74 | 6.83 | 6.07 | 5.31 |
| 45 | 3.74 | 3.72 | 3.68 | 75 | 7.00 | 6.16 | 5.35 |
| 46 | 3.79 | 3.76 | 3.73 | 76 | 7.18 | 6.24 | 5.38 |
| 47 | 3.84 | 3.82 | 3.78 | 77 | 7.36 | 6.32 | 5.40 |
| 48 | 3.90 | 3.87 | 3.82 | 78 | 7.53 | 6.40 | 5.42 |
| 49 | 3.67 | 3.92 | 3.87 | 79 | 7.70 | 6.46 | 5.44 |
| 50 | 4.02 | 3.98 | 3.93 | 80 | 7.87 | 6.52 | 5.46 |
| 51 | 4.08 | 4.04 | 3.98 | | | | |
| 52 | 4.15 | 4.11 | 4.04 | | | | |
| 53 | 4.22 | 4.17 | 4.09 | | | | |
| 54 | 4.30 | 4.24 | 4.15 | | | | |

DUPLICATE

18

CLIC-3002

## FEMALE

| Age of Payee | Monthly Income for Life with Guaranteed Period of: | | | Age of Payee | Monthly Income for Life with Guaranteed Period of: | | |
|---|---|---|---|---|---|---|---|
| | 10 Years | 15 Years | 20 Years | | 10 Years | 15 Years | 20 Years |
| 25 | $2.96 | $2.96 | $2.95 | 55 | $4.01 | $3.98 | $3.94 |
| 26 | 2.98 | 2.97 | 2.97 | 56 | 4.08 | 4.04 | 3.99 |
| 27 | 2.99 | 2.99 | 2.99 | 57 | 4.15 | 4.11 | 4.05 |
| 28 | 3.01 | 3.01 | 3.01 | 58 | 4.22 | 4.18 | 4.11 |
| 29 | 3.03 | 3.03 | 3.03 | 59 | 4.30 | 4.25 | 4.18 |
| 30 | 3.05 | 3.05 | 3.05 | 60 | 4.39 | 4.33 | 4.24 |
| 31 | 3.07 | 3.07 | 3.07 | 61 | 4.48 | 4.41 | 4.31 |
| 32 | 3.09 | 3.09 | 3.09 | 62 | 4.57 | 4.50 | 4.38 |
| 33 | 3.12 | 3.12 | 3.11 | 63 | 4.67 | 4.58 | 4.45 |
| 34 | 3.14 | 3.14 | 3.14 | 64 | 4.77 | 4.67 | 4.52 |
| 35 | 3.17 | 3.16 | 3.16 | 65 | 4.88 | 4.77 | 4.59 |
| 36 | 3.19 | 3.19 | 3.19 | 66 | 5.00 | 4.87 | 4.67 |
| 37 | 3.22 | 3.22 | 3.21 | 67 | 5.12 | 4.97 | 4.74 |
| 38 | 3.25 | 3.25 | 3.24 | 68 | 5.25 | 5.07 | 4.81 |
| 39 | 3.28 | 3.28 | 3.27 | 69 | 5.39 | 5.18 | 4.88 |
| 40 | 3.31 | 3.31 | 3.30 | 70 | 5.53 | 5.29 | 4.95 |
| 41 | 3.34 | 3.34 | 3.33 | 71 | 5.69 | 5.40 | 5.01 |
| 42 | 3.38 | 3.37 | 3.36 | 72 | 5.85 | 5.52 | 5.07 |
| 43 | 3.41 | 3.41 | 3.40 | 73 | 6.01 | 5.63 | 5.13 |
| 44 | 3.45 | 3.44 | 3.43 | 74 | 6.19 | 5.74 | 5.19 |
| 45 | 3.49 | 3.48 | 3.47 | 75 | 6.37 | 5.85 | 5.24 |
| 46 | 3.53 | 3.52 | 3.51 | 76 | 6.55 | 5.96 | 5.28 |
| 47 | 3.58 | 3.57 | 3.55 | 77 | 6.74 | 6.06 | 5.32 |
| 48 | 3.62 | 3.61 | 3.59 | 78 | 6.94 | 6.16 | 5.35 |
| 49 | 3.67 | 3.66 | 3.63 | 79 | 7.14 | 6.25 | 5.38 |
| 50 | 3.72 | 3.70 | 3.68 | 80 | 7.34 | 6.34 | 5.41 |
| 51 | 3.77 | 3.75 | 3.73 | | | | |
| 52 | 3.83 | 3.81 | 3.78 | | | | |
| 53 | 3.89 | 3.86 | 3.83 | | | | |
| 54 | 3.95 | 3.92 | 3.88 | | | | |

DUPLICATE

## OPTION 4. PROCEEDS LEFT AT INTEREST

The proceed may be left with the Company for a period of 1 to 23 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1) Annually      $30.00
2) Semiannually  $14.89
3) Quarterly     $7.42
4) Monthly       $2.47

The payee may withdraw portions of the proceeds by request in writing to the Company. At the end of the specified period, any remaining proceeds with accrued interest will be paid in one sum.

CLIC-3002

CONSECO LIFE INSURANCE COMPANY
11815 N. Pennsylvania Street
Carmel, Indiana 46032-4555
(317) 817-3700

### EXTENSION OF MATURITY DATE RIDER

This rider is a part of the policy to which it is attached. All policy provisions shall apply to this rider unless otherwise stated in the policy.

At any time while the insured is living and before the maturity date, you can request that the maturity date be extended. The effective date of the extension will be the monthly anniversary date on or next following the date we receive the request. This rider is available at no additional cost.

No other riders will continue past the original maturity date or past the original policy maturity date under this rider. Interest on loans, if any, will continue to accrue and will be added to the total indebtedness. We will continue to accept loan repayments, if any, to satisfy any outstanding indebtedness.

After the contract's original maturity date:

1. The death benefit, if payable, is the cash surrender value. This amount will reflect a deduction for any outstanding indebtedness.

2. Interest, if applicable, will be credited to the accumulation value of the policy in the same manner as was credited prior to the original maturity date.

3. There will be no cost of insurance or mortality charges deducted, provided that the policy's cash surrender value is greater than zero.

4. Expense charges, if applicable, may be assessed as charged prior to original maturity date.

5. Policy premium will no longer be accepted.

The policy will remain in force until the death of the insured(s), or the date that we receive your request to surrender the policy, whichever occurs first.

This rider is signed for Conseco Life Insurance Company.

James J. Carey

Secretary

President

CLIC-6000

CONSECO LIFE INSURANCE COMPANY
A Stock Company
Administrative Office: 11815 N. Pennsylvania Street, Carmel, Indiana 46032

## DEATH BENEFIT GUARANTEE RIDER

### DEFINITIONS

**Monthly Anniversary** - The effective date of this Rider and the same date of each month thereafter.

**Policy's Death Benefit** - The specified amount shown on the Policy Data page.

**Grace Period** - If the owner's cash surrender value does not equal or exceed the monthly deductions, and it does not meet the Death Benefit Guarantee Rider Premium requirement, then this Rider will enter in to the grace period and the following will apply:

1. The Company will send a written notice 30 days before the end of the grace period to the owner's last known address on record and to any assignee of record if the premium has not been previously paid, and
2. A grace period of 61 days from such Monthly Anniversary day will be allowed to pay a premium that will cover a monthly deduction.

The Rider will remain in force during the grace period, unless the policy is surrendered.

**Misstatement of Age or Sex** - If the age or sex of the insured has been misstated, the specified amount in the policy payable will be changed to that which the most recent monthly deduction would have been purchased at the correct age and sex.

### BENEFIT

This is a nonparticipating Rider. It provides for a guarantee of the policy's death benefit proceeds if the 20 Year Guarantee Premium Requirement has been met.

During the first 20 policy years, the Policy's Death Benefit will remain in force if the 20 Year Guarantee Premium Requirement has been met on each Monthly Anniversary. The Death Benefit will not remain in force beyond the Policy Anniversary nearest the Insured's 95th birthday.

### 20 Year Guarantee Premium Requirement
On each Monthly Anniversary the sum of all policy premiums paid minus any partial surrenders or policy loans must equal or exceed the sum of the 20 Year Guarantee Premiums required for the number of months the Rider has been in force.

### 20 Year Guarantee Premium
The 20 Year Guarantee Premiums on the Effective Date are shown on the Policy Data page indicating the 20 Year Guarantee Premiums. Increases or decreases other than those shown on the Policy Data page, if any, are based on the Riders and benefits attached to the Policy on the Effective Date and can occur as a result of any one of the following:

1. An increase or decrease in Specified Amount;
2. A change in any Insured's rate class;
3. A change in the cost of any Rider attached to the Policy; or
4. An addition or deletion of any Rider.

New Guarantee Premiums are effective on the date the changes occur, and will remain in effect until changed again. Any changes will be shown on a revised Policy Data page.

CLIC-6012

## GENERAL PROVISIONS

This Rider is made a part of the policy to which it is attached. This benefit is subject to all the provisions of this Rider and the policy.

## RATES

The level of premium that must be paid regardless of the credited interest rate of the policy is shown on the Policy Data page 20 Year Guarantee Minimum Premium Schedule.

## COST OF INSURANCE

There is no cost of insurance for this Rider.

## TERMINATION DATE

This Rider will automatically terminate upon the earliest of the following:

1. The Insured dies;
2. The policy reaches the Policy Anniversary Date nearest the Insured's 95th Birthday;
3. The 20 Year Guarantee Premium Requirement is not met on any Monthly Anniversary during the policy years 1 through 20;
4. The policy matures;
5. The policy terminates for any reason; or
6. The policy is surrendered.

This Rider is signed for Conseco Life Insurance Company.

Secretary

President

CLIC-6012                                                   2

## CONSECO LIFE Insurance Company

### Carmel, Indiana

### CHILDREN'S LEVEL TERM INSURANCE RIDER

The following is a part of the policy to which it is attached, DUPLICATE
provided this benefit is shown on a Policy Data Page.

### CONSIDERATION

This rider is issued in consideration of the
application and payment of the monthly cost of
insurance. A copy of the application is attached.

### DEATH BENEFIT

The amount of death benefit is shown in the
Monthly Cost of Insurance Schedule on a Policy
Data Page. The Company will pay this amount
upon receipt of proof of the death of a covered
child. Death must occur before the policy
anniversary on which such child is 25 and while
the policy and this rider are in force.

### COVERED CHILD

A covered child named in the application that is
between the ages of 15 days and 19 years will
become insured on the effective date of this rider.

After the date of application, a child born to the
insured will become insured on the date such child
attains the age of 15 days.

After the date of application, a child legally
adopted by the insured that is between the ages of
15 days and 19 years on the date of adoption will
become insured on the adoption date.

### BENEFICIARY

The beneficiary is the insured, if living, otherwise,
the surviving spouse of the insured; if there is no
surviving spouse the beneficiary will be any living
children of the insured, share and share alike. If
there are no living children the beneficiary will be
the estate of the last to die amoung the insured
and the children of the insured. The beneficiary
may be changed in accordance with the Owner and
Beneficiary Change Provision of the policy.

### COST OF INSURANCE

The monthly cost of insurance is calculated as (a)
multiplied by (b) where:
(a) is the cost of insurance rate;
(b) is the amount of this benefit at the beginning
of the policy month, divided by 1,000.

### COST OF INSURANCE RATE

Monthly cost of insurance rates for this rider are
based on the Commissioner's 1980 Standard Ordinary
Mortality Table, Age Last Birthday.

### MONTHLY DEDUCTION

The monthly deduction is the monthly cost of
insurance shown in the Monthly Cost of Insurance
Schedule on a Policy Data Page.

### CONVERSION

The insurance on a covered child may be converted
either on the policy anniversary on which the
insured is age 65, or the child is age 25, whichever
is earlier. The amount converted, without evidence
of insurability, may not be more than five times the
amount of this rider. The new policy may be on
any plan, except term, then being issued by the
Company. The premium rate for the new policy
will be the rate in effect on the conversion date.
The rate will be based on the child's attained age on
the conversion date and on the sex and rate
class on the effective date of this rider. The
suicide and contestable periods of the new policy
will be measured from the Effective Date of this
rider.

Conversion will be made upon receipt of a written
request and payment of the first premium on the
new insurance.

Waiver of premium for Total and Permanent
Disability and/or Accidental Death Benefits may be
included in the new policy only with the consent of
the Company.

### CHANGE IN COVERAGE

After the first policy year, the amount of death
benefit may be changed. Any change will be
subject to the following conditions:

1. A written request must be submitted to the
   Company.

2. The amount may not be changed to less than
   $1,000 or more than $5,000.

CR-86

3. For any increase, an application and evidence of insurability satisfactory to the Company must be submitted.

4. Any decrease will first be applied to the most recent increase in amount. It then will be applied to other increases in the reverse order in which they occurred; then to the original amount.

5. The first month's cost of insurance must be paid for any increase.

## PAID UP INSURANCE

Coverage under this rider will continue as paid up insurance after the death of the insured, provided the insured dies:

1. while the policy and this rider are in force, and

2. other than by suicide, if such death occurs within 1 year after the date if issue of the policy.

The paid up insurance will have cash values equal to the net single premium calculated on the basis of the 1980 CSO Mortality Table, Age Last Birthday and 4 1/2% interest compounded annually. Any cash value available within 30 days after any policy anniversary will not be less than the cash value on such policy anniversary. Information regarding the cash value is available from the Company upon request.

## INCONTESTABILITY

This rider will be incontestable after it has been in force for 2 years from the date of issue of this rider.

For any benefit increase, the two years period will begin on the effective date of such increase.

## SUICIDE EXCLUSION

The "Suicide" provision of the policy will apply to a covered child insured under this rider, except that the suicide period will begin on the date such child becomes insured under this rider.

If the insured commits suicide within the suicide period of the policy, the coverage under this rider for each child will be converted to a non-participating ordinary life policy. The amount

Licensed Resident Agent (if required)

of the new policy will be equal to the amount of this benefit. The conversion date will be the date of death of the insured. The premium rate will be the rate in effect on the conversion date. The rate will be based on the child's attained age on the conversion date, and on the sex and rate class on the effective date of this rider.

## NON-PARTICIPATING

This rider will not share in any of the Company's profits or surplus earnings.

## VALUES

This rider has no cash value, cash surrender value, or loan value.

## TERMINATION

This rider will terminate on the earliest of the following dates:

1. the policy anniversary on which the insured is age 65;

2. the monthly anniversary day on or next following the receipt of a written request, or

3. when the policy terminates.

Insurance on any covered child will terminate on the policy anniversary on which the child is age 25.

## GENERAL PROVISIONS

All provisions of the policy, which are not inconsistent with this rider, apply to this rider.

## EFFECTIVE DATE

The effective date is the date of issue of the policy, unless a later date is shown below.

The effective date of any increase will be the monthly anniversary day on or next following the date the application for the increase is approved.

The effective date of any decrease will be the monthly anniversary day on or next following the date the request is received in the Company's Principal Office.

## EFFECTIVE DATE:

*David K. A___*

Secretary

Dec 28 20 12:46p    ADOLPH LOVETT & ASSOC INC    770-808-7702                    p.2

**SINGLE INSURED LIFE**
☐ Conseco Life Insurance Company

DEC 2 8 2001

CONSECO.

0701R04159

| Part 1 - SECTION 1 - APPLICATION FOR INSURANCE | | | | | | |
|---|---|---|---|---|---|---|
| First Name | MI | Last Name (indicate if hyphenated name) | | ☐ Male | Date of Birth | Ht |
| Vanessa | | Harrell | | ☒ Female | | Wt |
| Address | | | City, State, Zip code Atlanta, GA 30311-9002 | | | |
| Social Security No | | Drivers License No. & State | | Phone No | | |
| Occupation and Income WHR 37,000 | | Occupation Duties and Employer Counselor/Supv. | | | Birthplace (state or country) FL | |

Have you used tobacco in any form in the past 36 months ☐Yes ☒No, 24 months ☐Yes ☐No, 12 months ☐Yes ☐No
If Yes, indicate type:

List any other name(s) and/or Social Security Number(s) the Primary Insured has ever used

| OWNER FOR POLICY IF OTHER THAN PRIMARY INSURED: | | | | | | |
|---|---|---|---|---|---|---|
| First Name | MI | Last Name (indicate if hyphenated name) | ☐ Male | Social Security No or Tax ID No | | Trust ID No |
| | | | ☐ Female | | | |
| Address | | | City, State, Zip code | | | |
| Relationship to Insured | | | Name and Date of Trust (if owner is a Trust) | | | |

| JOINT OWNER FOR POLICY IF OTHER THAN PRIMARY INSURED: | | | | | | |
|---|---|---|---|---|---|---|
| First Name | MI | Last Name (indicate if hyphenated name) | ☐ Male | Social Security No or Tax ID No | | Trust ID No |
| | | | ☐ Female | | | |
| Address | | | City, State, Zip code | | | |
| Relationship to Insured | | | Name and Date of Trust (if joint owner is a Trust) | | | |

**SECTION 2 - PLAN OF INSURANCE, RIDERS AND BENEFITS**

Plan of Insurance _CIUL 2_
Product Name

Face Amount $ _150,000.00_
(if amount of coverage exceeds $500,000, complete Financial Questionnaire)

**DEATH BENEFIT**
☒Option A (Level) (Default option if none marked)
☐Option B (Increasing)

**RIDERS**

☐ Life Insurance Protection Rider $ _____
☐ Spouse Rider $ _____
☒ Child Rider $ _10,000_
☐ Other Insured Rider $ _____
☐ Guaranteed Exchange Rider
☐ Waiver of Premium (Term Products)
☐ Waiver of Cost
☐ Waiver of Planned Periodic Premium
☐ Guaranteed Purchase Option
☐ Additional Insured Rider $ _____

☐ Accidental Death Benefit $ _____
☐ Guaranteed Insurability Option $ _____
☐ Disability Income Rider Benefit $ _____
☐ Unemployment Waiver of Cost
☐ IRB $ _____ (minimum $500)
☐ Death Benefit Guarantee
☐ Other _____

(Riders and Benefits vary by Plan and Company and may not be available in all states)

28-Dec-01-03:45P

## SECTION 3 - PREMIUM PAYMENTS – Method and Frequency

$ _____ Cash with Application

(Check one box only)

| Method | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|
| Direct | ☐ | ☐ | ☐ | N/A |
| PAC | N/A | N/A | ☐ | ☒ |
| Single Pay | ☐ | N/A | N/A | N/A |
| List Bill Civilian | ☐ | ☐ | ☐ | ☐ |
| Allotment Government | N/A | N/A | N/A | ☐ |
| Allotment | N/A | N/A | N/A | ☐ (☐26 pay) |

Branch of Service _____   ☐Active Duty   ☐Retired

Who will pay premiums?   ___Winer___

To whom shall mail be sent?
☐ Primary Insured
☒ Owner            ☐ Other

For flexible premium plans, indicate

$ 35 00 Planned Periodic Premium
(Write "None" if no future billing is desired)

$ 60.78 Additional First Year Premium

IRC Section 1035 Exchange?   ☐No   ☒Yes

$ _____ Single Premium

List Bill Billing Control No _____

Where shall mail be sent?
☒Residence   ☐Business   ☐ Other

Payor Address, if different from Insured or Owner       City       State       Zip code

## SECTION 4 - REQUESTS

Special Requests

VAX 1

## SECTION 5 - BENEFICIARY DESIGNATION

a Primary  Marketta Bledsoe    Age 24  Relationship  Daughter
           Marques Harrell      Age 19  Relationship  Son

(If Beneficiary is a Trust, provide name and date of Trust)

Name of Trust _____   Date of Trust _____

b Contingent _____   Relationship _____

## SECTION 6 - REPLACEMENT

a  Has any life or health insurance been denied, postponed, rated or modified?  ☐ Yes ☒No
   Is the coverage applied for intended to replace any existing insurance or annuity with this or any other company?
   ☒Yes ☐ No
   Do you now have any application for life, accident or health insurance or reinstatement of such insurance pending in any
   company? ☐ Yes ☒No
   Please provide detail to "Yes" answers _____

b  Life insurance in force and pending including business insurance: (If none, insert "None")

| Name of Company | Type of Coverage | Face Amount | Accidental Death | Year Issued | To Be Replaced? |
|---|---|---|---|---|---|
| Mass Gen Life | Valu-Term | 150,000 | | 1995 | yes |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

CLIC - SLA - 98                 2

[28-Dec-01 03.45P]

## PART II

Complete appropriate questionnaire if answering "Yes" to bold print impairment

|  | | YES | NO |
|---|---|---|---|
| 1 a. | Do you have any intentions to travel or reside outside the U S or Canada? (indicate country & dates below) | ☐ | ☐ |
| b. | In the past 5 years have you, or do you intend to engage in piloting an aircraft, motor vehicle racing, scuba diving, sky diving, hang gliding, parachuting, mountain climbing, horse racing or any other hazardous sports? | | ☐ |
| c. | Have you ever been convicted of a felony, reckless driving, or driving under the influence of drugs or alcohol, had your license suspended, or in the past three years had more than two moving traffic violations? | ☐ | ☐ |
| d. | Have you ever used heroin, cocaine, crack, LSD, any derivative of these drugs, or any other illegal or controlled substance except as prescribed by a physician? | ☐ | ☐ |
| 2 a. | In the past 10 years have you had or been treated for chest pain, high blood pressure, heart attack, stroke, TIA, diabetes, ulcer, glucose intolerance, asthma, emphysema, cancer, malignant tumor, or leukemia, a disease or disorder of the heart, lungs, kidneys, pancreas, liver, gastrointestinal, genito-urinary, or cardiovascular systems, anemia, arthritis, back/spine pain or injury or disease of the blood, bones, muscles, joints, skin, connective tissue or glands, the ears, eyes, nose, throat or any internal organs, any sexually transmitted disease, or albumin, sugar, pus, or blood in the urine; or an endocrine or metabolic disorder, including, but not limited to thyroid, hyperlipidemia, pituitary, or adrenal gland disorder? | ☐ | ☐ |
| b | In the past 10 years have you had or been treated for a mental, nervous, or neurological disorder, epilepsy, seizures, paralysis, sleep apnea, memory loss, depression, Alzheimer's or Parkinson's disease? | ☐ | ☐ |
| c | In the past 10 years have you received or been advised to seek counseling for alcohol or drug abuse? | ☐ | ☐ |
| 3. | In the past 10 years have you been treated or diagnosed as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) or tested positive for antibodies to Human Immunodeficiency Virus (HIV)? | ☐ | ☐ |
| 4 a. | In the past 5 years have you been hospitalized or consulted a physician or any member of the medical profession (list all occurrences)?, or have you had any blood tests (other than HIV or AIDS test), electrocardiograms, or other medical tests or studies (indicate tests and results)?, or have you taken or been advised to take any medication (list reason and medication-below)? | ☐ | ☐ |
| b. | Have you ever had any mental or physical disorder not listed above? | ☐ | ☐ |
| 5. | Has any immediate family member died of cardiovascular disease, cancer, or diabetes prior to age 60? | ☐ | ☐ |
| 6 | Name of Personal Physician (if no personal physician, write "None") | | |

Name. _____

Address. _____ Telephone No _____

## REMARKS

Provide details to questions 1 - 5 in the space provided below   Include question number, impairment, diagnosis, treatment, medication, date of occurrence, current status, and name and address of all doctors, hospitals, and medical facilities

_____

_____

(Attach extra sheet of paper if necessary.)

## DECLARATIONS

I/(We) represent that all statements and answers made in all parts of this application are full, complete and true   It is understood and agreed that
(1)   All such statements and answers shall be the basis for and a part of any policy issued on this application
(2)   No agent, producer, broker or examiner can accept risks or make or change contracts or waive the Company's rights or requirements
(3)   No insurance shall take effect unless the Primary Insured(s) is (are) alive and in the same condition of health as described in this application when the policy is delivered to the Owner and the full first premium is paid  However, if the full first premium is paid as set forth in the Conditional Receipt and/or Temporary Insurance Agreement (TIA) and the Conditional Receipt and/or the TIA is delivered to the Owner, the terms of the Conditional Receipt and/or TIA shall apply
(4)   Acceptance of a policy by the Owner shall constitute ratification of any changes made by the Company
(5)   Any person who, with the intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud

CLIC - SLA - 98                    3

28-Dec-01 03 45P

Dec 28 20 12:46p        ADOLPH LOVETT & ASSOC INC        770-808-7702        p.3

## AUTHORIZATION

I/(We) understand that Conseco Services LLC, an affiliate of the Company, its reinsurers, any insurance support organizations, and those persons authorized to represent them may need to collect information on me/(us) in regard to proposed coverage.

Therefore, I/(we) authorize any (1) person licensed to provide health care service, (2) hospital, (3) clinic or other medical facility; (4) insurer, (5) reinsurer, (6) insurance support organizations, including MIB (Medical Information Bureau) (7) veterans organization, (8) financial source, and (9) employer, to give the types of information listed below when this Authorization is presented

The types of information will include facts about my (1) mental and physical health, (2) other insurance coverage (3) hazardous activities; (4) character, (5) general reputation, (6) mode of living, (7) finances, (8) vocation, (9) Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) or Human Immunodeficiency Virus (HIV), and (10) other personal traits

The Company and its reinsurers will use the information in order to determine whether I am insurable  The insurance agent producer, or broker may also use the information to help update and improve my insurance program

Those parties named in the first paragraph of this Authorization, excluding insurance support organizations, may disclose the information that they have collected  They may disclose this information to (1) other insurers to which I have applied or may apply for insurance, (2) reinsurers, (3) the Medical Information Bureau, or (4) other persons who perform business professional, or insurance tasks for them.  They may also disclose information according to any contract with a member company or organization  Information may also be disclosed as allowed by law

This Authorization will be valid for 30 months after the date of signing  A copy of this Authorization shall be as valid as the original  I understand I have a right to receive a copy of this Authorization  I acknowledge receipt of a copy of the "Notice of Information Practices," which includes pre-notification information relating to investigative consumer reports and the Medical Information Bureau, Inc

If a minor child is proposed for coverage, these statements are made by the person authorized to act on behalf of the minor child named in the application

I understand and agree that this policy may include an administrative remedies provision which must be exhausted prior to any other action being taken at law or in equity  The provision provides for arbitration, which may be binding, depending on applicable state and federal law

☒ Check this box if the following paragraph is applicable
I understand that the policy for which I/(we) have applied is an equity indexed Universal Life policy  I also understand that the values of the policy may be affected by the external index, but the policy does not directly participate in any stock or equity investments

Signed at __Douglasville, GA__ on __12/27/01__
City and State                                                      Month, Day Year

Primary Insured (sign full legal name) X _Vanessa Harrell_

Applicant/Owner if other than the Primary
Insured (sign full legal name)

Signature of Parent or Guardian if Primary
Insured is a Minor (sign full legal name)

Signature of co-owner if other than Primary
Insured (sign full legal name)

Signature of Witness (Licensed Agent must _Adolph Lovett_
witness where required by law )

Signature (e.g., Trustee Signature,
Trustee)
                                                      Title of Authority

__770-981-0358__                    __Adolph Lovett__
Agent Phone Number                  Print Agent Name

__2550 E. Wesley Chapel Way #10__  __Decatur__    __GA__    __30035__
Agent Address                       City           State    Zip code

__4FFF024__    __091341__
Agent Number    State License Number        (Agent ID No for Florida Agents Only)

CLIC - SLA - 98                    4

28-Dec-01 03:

Dec 28 20 12:47p          ADOLPH LOVETT & ASSOC INC   770-808-7702                    p. 6

# MULTIPLE INSURED LIVES
☐ Conseco Life Insurance Company

V2X

CONSECO.

| Has any individual to be insured used tobacco in any form in the past 12 months?  ☐ Yes  ☐ No | If "Yes" indicate type |
|---|---|
| and date last used          Name                                    Type | Month   Year |

## Section I
## Spouse or Joint Insured

| First Name | MI | Last Name (indicate if hyphenated name) | | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |
|---|---|---|---|---|---|---|---|---|

## Dependents  (Attach a separate sheet for additional persons not listed)

| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No. | Date of Birth | Birth Place | Ht Wt |
|---|---|---|---|---|---|---|---|---|
| Marketta | | Bledsoe | daughter | | | 12-4-77 | AL | Ht 5 Wt 115 |
| Marques | | Harrell | son | | | 1-8-82 | AL | Ht 5'9" Wt 140 |
| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |
| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |
| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |

## Other Insureds

| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |
|---|---|---|---|---|---|---|---|---|
| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |
| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |
| First Name | MI | Last Name | Relationship | ☐ Male ☐ Female | Social Security No | Date of Birth | Birth Place | Ht Wt |

## Section 2
Life Insurance in Force and Pending on all individuals to be insured, including business insurance:
(If none, insert "None")

| Spouse | Dependent/ Child | Other Insureds | Name of Company | Type of Coverage | Face Amount | Accidental Death | Year Insured | To Be Replaced |
|---|---|---|---|---|---|---|---|---|
| | ✓ | | Mass Gen Life | | 10,000 | | 1995 | yes |
| | | | | | | | | |
| | | | | | | | | |

Regarding all individuals to be insured:

|  |  | Spouse Yes No | Dependent/ Child Yes No | Other Insureds Yes No |
|---|---|---|---|---|
| Replacement: | (a) Has any life or health insurance been denied, postponed, rated, or modified? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | (b) Is the coverage applied for intended to replace any existing insurance or annuity with this or any other company? (If "Yes," complete comparison statement, if required) | ☐ ☐ | ☑ ☐ | ☐ ☐ |
| | (c) Do you now have any application for life, accident or health insurance or reinstatement pending with any company? | ☐ ☐ | ☐ ☐ | ☐ ☐ |

If "Yes" was answered to any of the above questions, please give details

CLIC-MLA-98

1

(03/01)

28-Dec-01 03.45P

**Section 3**
Answer questions below on all individuals to be insured or other than Primary Insured

| Complete appropriate questionnaire if answering "Yes" to bold print impairment. | Spouse Yes No | Dependent/ Child Yes No | Other Insureds Yes No |
|---|---|---|---|
| 1a. Do you have any intentions to travel or reside outside the U.S. or Canada? (indicate country and states) | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 1b. In the past 5 years have you, or do you intend to engage in piloting an aircraft, motor vehicle racing, scuba diving, sky diving, hang gliding, parachuting, mountain climbing, horse racing or any other hazardous sports? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 1c. Have you ever been convicted of a felony, or reckless driving, or driving under the influence of drugs or alcohol, or had your license suspended, or in the past three years had more than two moving traffic violations? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 1d. Have you ever used heroin, cocaine, crack, LSD, any derivative of these drugs, or any other illegal or controlled substance except as prescribed by a physician? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 2a. In the past 10 years have you had or been treated for chest pain, high blood pressure, heart attack, stroke, TIA, diabetes, ulcer, glucose intolerance, asthma, emphysema, cancer, malignant tumor, or leukemia, a disease or disorder of the heart, lungs, kidneys, pancreas, liver, gastrointestinal, genito-urinary, or cardiovascular systems, or anemia, arthritis, back/spine pain or injury or disease of the blood, bones, muscles, joints, skin, connective tissue or glands, the ears, eyes, nose, throat or any internal organs, or any sexually transmitted disease, albumin, sugar, pus, or blood in the urine, or an endocrine or metabolic disorder, including, but not limited to thyroid, hyperlipidemia, pituitary, or adrenal gland disorder? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 2b. In the past 10 years have you had or been treated for a mental, nervous, or neurological disorder, epilepsy, seizures, paralysis, sleep apnea, memory loss, depression, Alzheimer's or Parkinson's disease? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 2c. In the past 10 years have you received or been advised to seek counseling for alcohol or drug abuse? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 3. In the past 10 years have you been treated or diagnosed as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) or tested positive for antibodies to Human Immunodeficiency Virus (HIV)? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 4a. In the past 5 years have you been hospitalized or consulted a physician or any member of the medical profession (list all occurrences)?, or have you had any blood tests (other than HIV or AIDS test) electrocardiograms, or other medical tests or studies (indicate tests and results)?; or have you taken or been advised to take any medication (list reason and medication)? | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| 4b. Have you ever had any mental or physical disorder not listed above? | ☐ ☐ | ☐ ☐ | ☐ ☐ |

Provide details to questions 1-4 in the space provided below. Include question number, insured name, impairment, diagnosis, treatment, medication, date of occurrence, current status and name and address of all doctors, hospitals, and medical facilities

_____

_____

_____

5. Name of Spouse's personal physician    (If none, state "None")

_____

Address _____

6. Name of Children's personal physician    (If none, state "None")

_____

Address _____

7. Name of Other Insured's personal physician (If none, state "None")

_____

Address _____

Dec 28 20 12:48p     ADOLPH LOVETT & ASSOC INC     770-808-7702                     p.8

## DECLARATIONS

I /(We) represent that all statements and answers made in all parts of this application are full, complete and true  It is understood and agreed that

(1) All such statements and answers shall be the basis for and a part of any policy issued as a result of this application
(2) No agent, producer, broker, or examiner can accept risks, or make change to contracts, or waive the Company's rights or requirements
(3) No insurance shall take effect unless the Proposed Insured(s) is (are) alive and in the same condition of health as described in this application when the policy is delivered to the Owner and the full first premium is paid  However, if the full first premium is paid as set forth in the Conditional Receipt and/or Temporary Insurance Agreement (TIA) and the Conditional Receipt and/or TIA is delivered to the Owner, the terms of the Conditional Receipt and/or TIA shall apply
(4) Acceptance of a policy by the Owner shall constitute ratification of any changes made by the Company
(5) Any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud

## AFFIRMATION OF UNDERSTANDING

I understand that any sales proposal or policy illustration that has been presented to me as part of the agent's sales presentation may contain certain non-guaranteed elements  These non-guaranteed elements include expense charges, cost of insurance charges and interest crediting rates  A change in any or all of these non-guaranteed elements or in the amount or timing of premium payment may affect the performance illustrated such that values actually realized may be less than or greater than the values illustrated.  I further understand that any tax implications in a sales proposal are based on current tax law and that any questions concerning taxes should be referred to my personal tax advisor.

## AUTHORIZATION

I /(We) understand that Conseco Services LLC, an affiliate of the Company, its reinsurers, any insurance support organizations, and those persons authorized to represent them may need to collect information on me/(us) in regard to proposed coverage

Therefore, I/(we) authorize any: (1) person licensed to provide health care service; (2) hospital, (3) clinic or other medical facility, (4) insurer, (5) reinsurer, (6) insurance support organizations, including MIB (Medical Information Bureau), (7) veterans organization; (8) financial source, and (9) employer, to give the types of information listed below when this Authorization is presented

The types of information will include facts about my (1) mental and physical health, (2) other insurance coverage; (3) hazardous activities; (4) character, (5) general reputation, (6) mode of living, (7) finances, (8) vocation, (9) Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) or Human Immunodeficiency Virus (HIV); and (10) other personal traits

The Company and its reinsurers will use the information in order to determine whether I am insurable  The insurance agent, producer, or broker may also use the information to help update and improve my insurance program

Those parties named in the first paragraph of this Authorization, excluding insurance support organizations, may disclose the information that they have collected  They may disclose this information to (1) other insurers to which I have applied or may apply for insurance, (2) reinsurers; (3) the Medical Information Bureau, or (4) other persons who perform business, professional, or insurance tasks for them  They may also disclose information according to any contract with a member company or organization  Information may also be disclosed as allowed by law

This Authorization will be valid for 30 months after the date of signing  A copy of this Authorization shall be as valid as the original  I understand I have a right to receive a copy of this Authorization  I acknowledge receipt of a copy of the "Notice of Information Practices," which includes pre-notification information relating to investigative consumer reports and the Medical Information Bureau, Inc.

If a minor child is proposed for coverage, these statements are made by the person authorized to act on behalf of the minor child named in the application.

I understand and agree that this policy may include an administrative remedies provision which must be exhausted prior to any other action being taken at law or in equity  The provision provides for arbitration, which may be binding, depending on applicable state and federal law.

Signed at _Douglasville, GA_     On _12-27-01_
    City and State                  Month/Day/Year

Signature of Spouse or Joint Insured if proposed for coverage          Signature of Parent or Guardian if individual to be insured is a Minor
(sign full legal name)                                                  (sign full legal name)

Signature of Other Insured if proposed for coverage                    Signature of Other Insured if proposed for coverage
(sign full legal name)                                                  (sign full legal name)

Signature of Other Insured if proposed for coverage                    Signature of Other Insured if proposed for coverage
(sign full legal name)                                                  (sign full legal name)

Signature of Witness
(Licensed Agent must witness where required by law)

CLIC-MLA-98                                    3

28-Dec-01 03.45

Conseco Life Insurance Company
11825 N. Pennsylvania Street
Carmel, IN 46032

## NAME CHANGE ENDORSEMENT

The policy to which this endorsement is attached is hereby amended as follows:

As of July 6, 2015, Conseco Life Insurance Company changed its name to Wilco Life Insurance Company ("Wilco").

All future correspondence, premiums, complaints and claims should be sent to Wilco at its customer service address listed below.

All terms, benefits, and conditions of the policy remain unchanged and Wilco Life Insurance Company has assumed full liability under the policy, but all references to Conseco Life Insurance Company are changed to Wilco Life Insurance Company.

The customer service address for Wilco is:

Wilco Life Insurance Company
PO Box 305017
Nashville, TN 37230-5017

Telephone: 844-877-6907

Chris Stroup, Chairman & CEO                    Mark Sarlitto, Secretary

WLCO15P227

**CONSECO LIFE
INSURANCE COMPANY
CARMEL, INDIANA**

DUPLICATE

**FLEXIBLE PREMIUM
ADJUSTABLE LIFE INSURANCE POLICY**

**ADJUSTABLE DEATH BENEFIT. PROCEEDS PAYABLE UPON DEATH OF INSURED
PRIOR TO THE MATURITY DATE. FLEXIBLE PREMIUMS PAYABLE DURING THE
LIFETIME OF THE INSURED UNTIL THE MATURITY DATE
CASH VALUES MAY BE ENHANCED BY AN ACCUMULATION VALUE BONUS
COMPUTED BY REFERENCE TO INDEX PERFORMANCE.
NONPARTICIPATING.**

CLIC-3002