| | | |
|---|---|---|
| **VANESSA ANDERSON, individually** | * | |
| **and on behalf of a class of similarly** | * | |
| **situated persons,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Case No.: 1:19-cv-00008-JRH-BKE** |
| | * | |
| **WILCO LIFE INSURANCE** | * | |
| **COMPANY,** | * | |
| | * | |
| **Defendant.** | * | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT WILCO LIFE INSURANCE COMPANY'S RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

---

Plaintiff Vanessa Anderson ("Anderson" or "Plaintiff") opposes and responds to the Renewed Motion to Dismiss (Doc. 42) filed by Wilco Life Insurance Company ("Wilco" or "Defendant").

## I. INTRODUCTION

Wilco's Renewed Motion to Dismiss (Doc. 42) presents a battle of dueling contractual interpretations of an insurance policy that will be outcome determinative to the case. Anderson welcomes the challenge at this early stage of the proceedings and agrees the Court should interpret the contract **as a matter of law**.

The legal issue in dispute concerns the factors that Wilco can consider in determining monthly cost of insurance ("COI") charges in its universal life insurance policies. Anderson contends the monthly COI charges <u>must be</u> based upon the factors described in her policy. (Doc. 1-

1, Compl., ¶¶1-21.) On the other hand, Wilco asserts its monthly COI charges can be based upon any factor it wishes, in its sole discretion, so long as the maximum guaranteed monthly COI rates are not exceeded. (Doc. 42, p. 11.) Thus, the question before the Court, is whether the policy requires Wilco to determine monthly COI rates based upon the factors that are described in the policy.

Wilco fails to reference the specific provision in the policy that sets forth the parties' intentions and agreement concerning how the actual monthly COI rates must be determined. This provision reads as follows:

> ACTUAL MONTHLY COST OF INSURANCE RATES **WILL BE** DETERMINED BY THE COMPANY **BASED ON THE POLICY COST FACTORS DESCRIBED IN YOUR POLICY.** HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

(Doc. 21-1, p. 5 of 15) (emphasis added)

This provision begs the question, how could a sophisticated insurance company, represented by highly qualified counsel, totally overlook a contractual provision that <u>requires</u> it to set monthly COI rates based upon the "factors described in your policy"? Perhaps, the decision makers at the insurance company who determined COI rates based upon factors <u>not</u> described in the policy also failed to notice the same provision. Discovery will shed light on why this policy provision was disregarded.

In any event, when the policy is read as a "whole," as it must be, the policy unambiguously requires Wilco to set monthly COI rates based upon the "factors described in the policy." Anderson has plainly and plausibly alleged that Wilco set monthly COI rates based on factors <u>not</u> described in the policy. (Doc. 1-1, Compl. ¶¶2, 22, 29, 31, 32, 34, 61.) Again, discovery will yield the truth on this factual issue. On the other hand, in view of the above referenced policy provision, Wilco's

contention that it can set monthly COI rates based on <u>any</u> factor it wishes, even if the factor is <u>not</u> described in the policy, is unreasonable, implausible, and contradictory to the very terms of the adhesion contract it drafted.

Accordingly, Wilco's Motion to Dismiss should be denied.

## II.  FACTUAL BACKGROUND

This is a class action brought on behalf of Plaintiff and similarly situated owners of life insurance policies issued by Conseco Life Insurance Company ("Conseco").  In July 2014 Wilton RE acquired Conseco and changed Conseco's name to Wilco. (Doc. 46, p. 5.) Plaintiff seeks to represent a class of Wilco policyholders who have been forced to pay unlawful and excessive cost of insurance charges by Wilco.  (Compl., ¶15.)

The policies at issue in this case are universal life policies issued on standardized form contracts by Wilco. (*Id*.) Universal life policies combine death benefits with a savings or investment component, often known as the "accumulation value." (*Id*., ¶16.)  A key feature of such policies is that premiums are broken down between insurance and savings so charges for each are unbundled and transparent. (*Id*., ¶9.)  The COI charge is the policy's insurance component and is used to cover the insurer's mortality risk. (*Id*., ¶11.)  The savings component allows policyholders to use their policies as a savings vehicle and earn interest and bonuses on the accumulation value. (*Id*., ¶16.)

Because COI charges are intended to compensate the insurer for mortality risks (i.e., the expected probability the insured will die in a particularly policy year) they are determined by the insurer based upon mortality experience. (*Id*., ¶¶11, 24, 25.)

Anderson has alleged, based upon the terms of the policy, that COI rates can only be **based upon the policy cost factors described in the policy**. The specific provision Anderson relies upon states as follows:

> Actual monthly cost of insurance rates **will be** determined by the company **based on the policy cost factors described in your policy**. However, the actual cost of insurance rates will not be greater than those shown above.

(Compl., ¶20, Doc. 21-1, p. 5 of 15) (emphasis added)

The only policy cost factors described in the policy are the "insured's sex, attained age and premium class on the date of issue." (Compl., ¶¶23-24.)

Anderson has further alleged that Wilco, contrary to the terms of her policy, has based COI rates on factors not described in the policy. (*Id*., ¶22.) In particular, Anderson has alleged that Wilco based COI increases as a means to recoup investment losses (*Id*., ¶¶2, 22, 31, 61); to "force lapse" policies to avoid having to pay out death benefits (*Id*., ¶¶2, 32); to make up for incorrect assumptions that it made when it originally priced the policies (*Id*., ¶22); to negate or offset the amount of interest it has to pay policyholders for guaranteed minimum rates (*Id*., ¶¶2, 22, 29, 61); and to make the policies more profitable (*Id*., ¶¶31, 32). None of these factors "are described" in Anderson's policy.

Anderson further alleges mortality rates have steadily improved in the years since the policies were issued as reflected "in every Commissioner's Standard Ordinary (CSO) and other comparable mortality tables issued since 1980. (*Id*., ¶26.) By basing COI rates on factors not described in the policy and ignoring improved mortality rates, Anderson is asserting Wilco has converted COI charges from a cost-recovery mechanism meant to cover actual mortality costs into a profit vehicle not remotely tethered to mortality factors.

In sum, Anderson claims Wilco has violated the terms of the subject policies by failing to base cost of insurance rates on the mortality factors described in its policies, and instead is using COI charges as a mechanism to bolster its profits, run off policyholders and recoup investment losses. As a result of this misconduct, Anderson seeks, among other things, monetary relief for the COI overcharges that Wilco has wrongly imposed and continues to impose on its customers.

## III. LEGAL STANDARD

This Court recently summarized the standards that govern a motion to dismiss as follows:

> A motion to dismiss under Rule 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. *See Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).

> The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Id*. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although there is no probability requirement at the pleading stage, "something beyond ... mere possibility ... must be alleged." *Twombly*, 550 U.S. at 556-57, 127 S.Ct. 1955 (*citing Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

*Comerinsky v. Augusta Coating & Manufacturing, LLC*, No. CV118-198, 2019 WL 4189345, *3 (S.D. Ga. Sept. 13, 2019).

# IV. ARGUMENT

## A.      The Policy Means What It Says.

The Eleventh Circuit succinctly summarized the rules that govern the construction of insurance policies under Georgia law as follows:

> Under Georgia law, [a]n insurance policy is a contract and subject to the ordinary rules of contract construction. If the policy language is clear and unambiguous, the contract must be enforced according to its plain terms. But, when an insurance policy is deemed to be ambiguous, it is construed strictly against the insurer/drafter and in favor of the insured.
>
> A policy provision is ambiguous when it is subject to more than one reasonable interpretation. One important indicator of ambiguity in a policy is whether nearly identical or similar language has been construed differently by other courts.

*Ace American Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1252 (11th Cir. 2019)(internal citations and quotation marks omitted).

"[T]he cardinal rule to be considered when interpreting an insurance policy under Georgia law is to determine and carry out the intent of the parties." *Id.* "In ascertaining the parties' intention, ... [the court is] directed to consider the insurance policy as a whole and seek a construction that will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions  meaningless or mere surplusage. *Id.* at 1253-1254.

"In construing the policy, [t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.  The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 223 F.3d 1253, 1254-1255 (11th Cir. 2000)(internal citation and quotation marks omitted).  "If ... an insurance policy is confusing to a layman, the policy is ambiguous[,]" and "[i]f a policy is ambiguous, the policy shall be construed

against the drafter." *Id*.

To establish a breach of contract claim under Georgia law, a plaintiff must show the "(1) breach and the (2) resultant damages to the party who has the right to complain about the contract being broken." *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780, 785, 805 S.E.2d 270 (2017). In this action, Anderson asserts that Wilco has breached her policy, and the policies of similarly situated persons, by (1) basing monthly COI rates on factors not permitted by the policy and (2) failing to decrease or maintain COI rates as mortality rates have improved due to longer life expectancy. (Compl., ¶¶61, 62.) The Defendant seeks to dismiss the contract claim on the premise that the policy <u>did not</u> require it to describe the factors its monthly COI rates were based upon and, therefore, it "could set the current monthly COI rates in a manner it deemed appropriate, as long as they were less than the guaranteed maximum rates." (Doc. 42, pp. 3, 6, 11-12.)

The specific policy provision at issue states as follows:

> ACTUAL MONTHLY COST OF INSURANCE RATES **WILL BE** DETERMINED BY THE COMPANY **BASED ON THE POLICY COST FACTORS DESCRIBED IN YOUR POLICY.** HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

(Compl., ¶20, Doc. 21-1, p. 5 of 15) (emphasis added)

The Plaintiff asserts the provision means exactly what it says — "actual monthly insurance rates will be...based on...factors described in your policy." Logically, if the factors are <u>not</u> described in the policy, they <u>cannot</u> be used to set actual monthly COI rates. Wilco, however, pretends this provision is not in the policy. Rather, Wilco claims it does not have to describe the factors in the policy and can base its COI rates on <u>any</u> factor it can conjure up, which supposedly could include executive bonuses, dividends to shareholders, or even lottery tickets. To reached its desired

interpretation, Wilco must retroactively red-line the operative policy provision to state as follows:

> ACTUAL MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY ==IN THE MANNER IT DEEMS APPROPRIATE== ~~based on the policy cost factors described in your policy~~. HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

(Highlighted language added, previously existing language stricken)

Unfortunately for the Defendant, a contracting party cannot simply add and delete language of its choosing after the fact. *Covington v. Brewer*, 101 Ga. App. 724, 730, 101 Ga. App. 724 (1960) ("contracts must be construed according to the intention of the parties at the time of their execution.").

If, as Anderson alleges, Wilco based its monthly COI rates on factors <u>not</u> described in the policy, it is in breach of contract.

Anderson's position that the COI provision "means what it says" is further supported by and consistent with other provisions in the policy. As alleged in the Complaint, the <u>only</u> policy cost factors described in the policy are the mortality factors identified in the policy, those being "the insured's sex, attained age and the premium class on the date of issue." (Compl., ¶21; Doc. 21-1, p. 14 of 15.) The policy actually uses the terms "cost of insurance" and "mortality" interchangeably, which is common in the industry. For example, the policy requires Wilco, on an annual basis, to send the policyowner "a report that shows premiums paid, expense charges, interest credited, **mortality charges**, outstanding loans, Current Cash Value, Current Surrender Value, Equity Bonus, and all charges since the last report." (Doc. 21-1, p. 9 of 15) (emphasis added). By using the terminology "mortality charges" (as opposed to "cost of insurance charges"), the policy is clearly

indicating its monthly COI charges are the same thing as the "mortality charges" being made for the insurance component of the policy. Of course, it is well understood that mortality charges are directly tied to the mortality rates. Moreover, in the annual reports sent to policyowners, it specifically defines the cost of insurance charges (or "mortality charges" as referenced in the policy) as "THE MONTHLY COST OF PURE INSURANCE PROTECTION UNDER THE POLICY." (Doc. 46, pp. 60, 64, 66.) Consequently, based upon the intention of the parties as expressed in the policy, COI charges a/k/a mortality charges are for the cost of pure insurance protection provided by the policy, which is reasonably understood to mean the cost to insure associated with mortality rates and experience.

Finally, the only section in the policy that describes "policy cost factors" reads, in full, as follows:

> COST OF INSURANCE RATES
>
> The guaranteed monthly cost of insurance rates for the policy **are based on the insured's sex, attained age and premium class on the date of issue**. Attained age means age on the prior policy anniversary except when this policy is issued when it means age last birthday prior to policy date. These rates are shown on a Policy Data Page.
>
> Current monthly cost of insurance rates will be determined by the Company. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.
>
> The monthly cost of insurance rate for any rider is shown or referred to in the Cost of Insurance Schedule section of a Policy Data Page.

(*Id.*, p. 14 of 15) (emphasis added).

Pursuant to the express requirement on p. 4 of the policy (*Id.*, p. 5 of 15), a reasonable insured would expect Wilco to describe and enumerate in this section the factors on which the

monthly COI charges will be based upon.  The <u>only</u> factors described in this section "are based on the insured's sex, attained age and premium class on the date of issue."  Nowhere in this section, or <u>anywhere</u> else in the policy, does it describe or enumerate any other factors on which that the monthly COI charges will be based.

On the other hand, it is an unreasonable interpretation of the policy to state actual monthly COI rates <u>will be</u> described in the policy and then argue, as Wilco does, that it can base monthly COI rates on factors <u>not</u> described in the policy.  Under fundamental contract construction principals, contractual provisions cannot simply be discarded as surplusage and rendered meaningless.  *See, Garrett v. Southern Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 184, 739 S.E. 2d 661 (2013) ("a court should avoid an interpretation of a contract which renders any of its terms meaningless or mere surplusage."); *Homelife Communities Group, Inc. v. Rosebud Park, LLC*, 280 Ga. App. 120, 122, 633 S.E. 2d 423 (2006) ("It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless.").

Wilco also suggests that the mortality factors of "the insured's sex, attained age and premium class on the date of issue" <u>only</u> apply to the guaranteed monthly COI rates and not to the actual or current monthly COI rates because those factors are not again re-described when referencing current monthly cost of insurance rates.  (Doc. 42, pp. 11-12.)  Once again, this completely ignores the fact the policy expressly requires Wilco to set actual monthly rates on cost factors <u>described</u> in the policy.

A reasonable insured, being expressly told that the policy cost factors used to set actual COI rates are described in the policy, would expect the factors to be described.  The policy does, indeed, describe the factors that go into the guaranteed monthly COI rates.  A reasonable insured, unless told otherwise, would believe the <u>same</u> factors used to set "guaranteed" monthly COI rates would be used

10

to set "actual" monthly COI rates. The "guaranteed" monthly COI rate is simply a cap or maximum amount that can be charged. If the insurer determines that its <u>actual</u> mortality experience, based upon the same factors that have been previously described, is less than the guaranteed maximum mortality experience, the insured will be charged less than the guaranteed rate. Of course, if the insurer's actual mortality experience based upon the enumerated factors is more than the guaranteed rate, the rates are capped. The insured would have no reason to suspect the insurer would use <u>undescribed</u> factors to set actual COI monthly rates when he or she was already told elsewhere in the policy that the factors would be described.

To adopt Wilco's strained interpretation that it can base its actual COI rates on any factor it wishes would create an overt ambiguity where none previously existed. Even if an ambiguity could be created out of thin air, Georgia law **requires** the ambiguity to be "liberally construed against" the drafter of an adhesion insurance contract and in favor of the insured. *See State Farm Mut. Auto. Ins. Co. v. Staton*, 286 Ga. App. 23, 26, 685 S.E. 2d 263 (2009) (also recognizing "a court may not strain the construction of the policy so as to discover an ambiguity where none existed," *Id.*). Accordingly, under fundamental principals of contract construction, actual monthly COI rates must be based upon the factors described in the policy.

### B. Anderson's Reading of the "Based On" Provision is Supported by the Majority of Courts that Have Addressed the Provision in Other COI Rate Increase Cases.

After ignoring its own policy language that expressly requires it to set "cost of insurance rates based upon policy cost factors described in the policy," Wilco seeks solace from cases that don't contain the same language. These cases are not only inapposite because they are based upon entirely different policy language, the reasoning behind the cases are flawed and have been routinely rejected.

Taking an isolated provision in the policy with giving context to the policy as a "whole," Wilco contends that the phrase "based on" in the policy does not mean that the actual monthly COI rate will be based exclusively on the factors identified in the policy. According to Wilco, it is free to utilize whatever undisclosed factors it desires in setting the rate, regardless of whether those factors are expressly identified in the policy. In support of this contention, Wilco heavily relies on a pair of 2013 cases from the Seventh Circuit, *Norem v. Lincoln*, 737 F. 3d 1145 (7th Cir. 2013) and *Thao v. Midland National Life Ins. Co.*, 549 F. App'x 534 (7th Cir. 2013). However, *Norem* and *Thao* are easily distinguishable from the current action in light of this important fact: unlike the Wilco policy, the policies in *Norem* and *Thao* contained **no** language stating that "actual monthly cost of insurance rates will be determined by the Company based on the policy cost factors described in your policy." Had that same language contained in the Wilco policy been present in *Norem* and *Thao*, the Seventh Circuit could not have possibly ruled in favor of the insurers' interpretation.

Moreover, Wilco ignores the fact that the majority of courts that have addressed a "based on" provision in COI rate increase cases - - - including an appellate court in Wilco's home state - - - have determined that a cost of insurance provision that is "based on" enumerated factors precludes an insurer from considering non-enumerated factors in establishing COI rates. Notably, these courts found in favor of the insureds even though those policies also didn't have language that required the insurers to determine COI rates based upon the "factors described" in the policies. Opinions from this competing line of cases have addressed the shortcomings of the Seventh Circuit's reasoning and, at a minimum, demonstrate that different courts can interpret the "based on" provision in different ways, hence evidencing a further ambiguity that must be resolved in the insured's favor.

12

For example, in *Fleisher v. Phoenix Life Ins. Co.*, 18 F.Supp. 3d 456 (S.D.N.Y. 2014), the insurer contended that the enumerated factors identified in the policy were merely illustrative, and that the phrase "based on" should not be construed as limiting. *Id*. at 470. The court rejected this argument stating:

> First, it would be entirely reasonable for an insured to interpret the phrase "based on" as exhaustive. The Macmillan Online Dictionary lists as synonyms for "based on" phrases like "founded upon" and "consist of," while the Farlex Free Dictionary, another online dictionary, includes "relying on," "built on," and "contingent on" as synonyms. *See* Macmillan Publishers Limited, "Macmillan Dictionary," http://www.macmillandictionary.com/us (last visited April 29, 2014); Farlex, Inc., "The Free Dictionary," http://www.thefreedictionary.com/ (last visited April 29, 2014). At least some, and arguably all, of these synonyms fairly imply that the factors upon which something is "based" are the exclusive factors.
>
> In the insurance policies, the COI rate is "based on" six enumerated factors. In everyday parlance, when you make a calculation "based on" specific factors, you take only those factors into account; the calculation is made "relying on" or "building on" those factors. You calculate a baseball player's batting average "based on" his number of hits and his number of at bats — nothing more and nothing less. The area of a rectangle is calculated "based on" its width and length, while velocity is calculated "based on" distance and time.
>
> So it would be perfectly plausible — and certainly not unreasonable — for an average insured to conclude, as Fleisher argues, that when Phoenix says it will calculate the COI rate for a particular Policy Month "based on" six specifically enumerated factors, those are the only six factors it will take into account when adjusting the rate.
>
> Other courts have adopted precisely such a construction of "based on," holding that when a universal life insurance policy states that the policyholder's COI rate is "based on" certain pricing factors, that list of factors is exhaustive, not illustrative.

*Id*. at 471. In addressing the Seventh Circuit's interpretation of the phrase "based on," the court in *Fleisher* went on to state:

It seems to me that the Seventh Circuit has unnecessarily complicated a simple issue. Though there are literally dozens of *473 dictionary definitions of "base" for use in different literal and figurative contexts, the phrase "based on" is commonly understood to mean that something is created in reliance on identified factors.

Moreover, the *Norem* analogy to a cake recipe is inaccurate. A recipe is a list of ingredients that are combined to create something. In the cookbooks I read, recipes are exhaustive lists of all the ingredients needed to bake a cake, or fricassee a chicken, or roast a saddle of mutton. *See, e.g.,* Irma S. Rombauer & Marion Rombauer Becker, Joy of Cooking (Bobbs–Merrill Co. 1975) (1931). Highly experienced chefs might be able to play with recipes, but the average home cook (the person analogous to the average insured under New York law) follows them slavishly, without adding other, undisclosed ingredients. The cakes they bake are "based on" the ingredients listed in the recipe—they include those ingredients and none other.

The insurance policies at issue in both *Norem* and in this case are similar. Both identify the COI rate as one of the two factors that, taken together, fix the amount that will be charged for universal life coverage, and then go on to explain that changes in the COI rate will be calculated in terms of specific factors on which the rate is "based." There are four such factors in the *Norem* policy, *see* 737 F.3d at 1147; in this case, the policy identifies six. There is nothing in either policy to suggest that the listed factors are merely a starting point for the rate calculation, and that the insurance company is free to add a dollop of Undisclosed Factor A and a dash of Undisclosed Factor B in order to "season" the COI rate to its liking. If we must resort to cake analogies, then I prefer this one: the listed factors are the ingredients that, taken together, make up the recipe for calculating an adjusted COI rate.

*Id*. at 472-473.

Similarly, in *Vogt v. State Farm Life Ins. Co.*, 2018 WL 1747336 (W.D. Mo. April 10, 2018), the court interpreted the provision "...[t]hese [cost of insurance] rates for each policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class." *Id*. at *3. The insured argued that only these specified factors could be considered in setting the COI rates. The insurer

14

contended that "based on" does not mean exclusively founded upon, but instead permitted the insurer to add other factors, such as profits and expenses, to calculate COI rates. *Id.* In its analysis, the court stated:

> It is true that the phrase "based on" can be used by a cookbook author to describe the generic foundation of a cake, as found by the Seventh Circuit in *Norem.* But as explained in *Fleisher*, a recipe lists the ingredients for a specific cake; in that context, a reasonable lay person would not expect that they could achieve the same cake by using different or additional ingredients. In other words, "based on" is not always used to describe only the foundation of a thing. Frequently it is used to identify a specific thing from which something else is developed, achieved, or described; a specific recipe would be an example. Similarly, "jurisdiction based on diversity" means that jurisdiction is achieved by diversity or described as consisting of diversity. "Based on" in that particular case would not suggest that diversity is but one of many potential ways to establish subject matter jurisdiction. A request for a new trial based on an error in jury instruction 3 does not suggest that the new trial was also requested for a defect in jury instruction 4 or was an open-ended request for a new trial that would preserve all possible grounds on appeal.

*Id.* at *4. *See also Elizabeth Bally v. State Farm Life Ins. Co.*, 2019 WL 3891149 (N.D. Ca. Aug. 19, 2019) (same).

Other courts considering similar "based on" language in COI rate increase cases have likewise held that the phrase imposes an obligation on the insurer to determine cost of insurance rates in accordance with the factors enumerated in the policy. *See, e.g., Yue v. Conseco Life Ins. Co.*, 2011 WL 210943 at *8-10 (C.D. Cal. Jan. 19, 2011) (holding that "based on" provision is exhaustive); *see also Jeanes v. Allied Life Ins. Co.*, 168 F. Supp. 2d 958, 973–74 (S.D. Iowa 2001) (holding, where language stated that "[t]he Cost of Insurance Rate is based on the sex, attained age and rate class of the Insured," that "the plain language of the policies appears to provide no basis for increases in the cost of insurance other than increases due to expectations of future mortality"); *rev'd*

*in part on other grounds*, 300 F.3d 938 (8th Cir. 2002) (noting that the appellant did not challenge the district court's conclusion "that ALLIED breached the universal life policies by imposing the two percent COI fee increase because the policies provide that COI fees will be determined 'based on [ALLIED's] expectations as to future mortality experience' "); *Dean v. United Omaha Life Ins. Co.*, 2007 WL 7079558, at *4 (C.D. Cal. Aug. 27, 2007) (concluding that " 'based on' is best understood here as simply indicating that a calculation will be performed using the listed factors—not that the COI charge will be determined using additional, unmentioned factors"); *see also Alleman v. State Farm Life Ins. Co.*, 334 Fed. Appx. 470, 472 (3d Cir. 2009) (holding that State Farm policies stating that values were "based on the Insured's age last birthday and sex" unambiguously meant that age and sex were the only mortality factors relevant to the rate); *Feller v. Transamerica Life Ins. Co.*, 2016 WL 6602561 at *10 (C.D. Cal. Nov. 8, 2016) (denying insurer's motion to dismiss and finding the policy language susceptable to plaintiff's interpretation that the policy's required rate changes be connected to mortality costs); *Rosenbaum v. Philadelphia Life Ins. Co.*, 1994 WL 17118392 at *# (C.D. Cal. Mar. 1, 1994); *McMahon v. Transamerica Life Ins. Co.*, 2018 WL 3381406 at *5-6 (N.D. Iowa July 11, 2018) (acknowledging competing lines of cases addressing "based on" provision in denying insurer's motion to dismiss); *EFG Bank AG v. Lincoln National Life Ins. Co.*, 2017 WL 4222887 at *4-5 (E.D. Pa. Sept. 22, 2017) (denying insurer's motion to dismiss in COI rate increase case); *Thompson v. Transamerica Life Ins. Co.*, 2018 WL 6790561 at *7-8 (C.D. Cal. Dec. 26, 2018) (same); *Palumbo v. Nationwide Life Ins. Co.*, 2017 WL 80405 at *1-2 (D. Conn. Jan. 9, 2017) (same).

To be sure, the Court of Appeals of Indiana, Wilco's home state, has determined that a cost of insurance provision that is "based on" enumerated factors in the policy "unambiguously

precludes" an insurer from considering non-enumerated factors in establishing COI rates. *Lincoln v. National Life Ins. Co. v. Bezich*, 33 N.E. 3d 1160, 1168 (Ind. Ct. App. 2015) (jurisdiction transferred to the Indiana Supreme Court on September 3, 2015).

At the very least, the competing lines of cases relied upon by the parties evidence an ambiguity surrounding the "based on" provision in the policy. *Ace America Ins. Co.*, 930 F.3d at 1252 ("one important indicator of ambiguity in a policy is whether nearly identical or similar language has been construed differently by other courts."). Any ambiguity must be resolved in the insured's favor, as was done by other courts in similar COI rate increase cases. *Fleisher*, 18 F. Supp. 3d at 471 ("ambiguity alone compels me to reject Phoenix's interpretation of the phrase 'based on'."); *Vogt*, 2018 WL 1747336 at *4 ("at a minimum, there is an ambiguity that must be construed against the insurance company"); *McDaniel v. Chevron Corp.*, 203 F.3d 1099 (9th Cir. 2000); *Dean v. United of Omaha Life Ins.*, 2007 WL 7079558, at *5 (C.D. Cal. Aug. 27, 2007).

## C.    Anderson's Complaint Plausibly Alleges Contractual Breaches.

At the motion to dismiss stage, the court does not require the plaintiff's complaint to submit irrefutable proof that her allegations are true. At this stage, the Plaintiff's well-pled allegations are accepted as true. *Comerinsky, supra* at 1225.

The Complaint specifically alleges that Wilco set COI rates based upon factors <u>not</u> described in the policy:

- "The true reason for this increase is Wilco's unlawful attempt to subsidize the cost of meeting its interest guarantees by making its policyholders pay for its own investment losses, and to force those policyholders to surrender their policies when the increases become impossible to pay, so that Wilco can avoid ever having to pay out of death benefits on those policies."

- The policies do not authorize Wilco to "set or increase cost of insurance rates for the Policies to recoup past losses on the policies due to Wilco's investment experience, or incorrect assumptions that it made when it originally priced the Policies,"

- The policies do not authorize Wilco to "set or increase cost of insurance rates for the Policies to negate or offset the amount of interest it is obligated to pay policyholders at guaranteed minimum rates."

- "The sudden and dramatic COI increases are not 'based on the insured's sex, attained age, and premium class on the date of issue,' but rather on Wilco's unlawful effort to avoid its contractual obligations to make guaranteed interest payments to policyholders."

- "Wilco is attempting to unlawfully shift its investment losses to policyholders by 'using COI increases to maintain profits.' In other words, through unlawful COI increases, Wilco seeks to offset or subsidize its interest guarantees by dramatically increasing monthly deductions taken from the policyholders' accumulation values."

- "The COI increases also are motivated by Wilco's desire to make the Policies collectively more profitable by inducing more of them to lapse."

- "In short, through the massive COI increases, Wilco is attempting to avoid its obligation to credit guaranteed interest rates under the Policies and to recoup its past and current losses and, in the process, is preventing policyholders from receiving their contractual benefits under the policies."

- "Wilco breached the terms of the Policies by increasing the cost of insurance rates for Plaintiff and Class Members for reasons not permitted by the Policies, including without limitation, to recoup past losses and to reduce the amount of interest it is obligated to credit to Plaintiff and Class Members."

(Doc. 1-1, Compl., ¶¶2, 22, 29, 31, 32, 34, 61.)

Not only has Anderson plausibly alleged such conduct has occurred, it is undeniable Wilco (formally Conseco) has actually set COI rates in universal life policies based upon factors <u>not</u> described in its policies. For example, in 2013 Wilco (then known as Conseco) settled a COI case for $73 million as a result of setting COI rates on factors that were not allowed by the policies. (*Id*., ¶14.) *See Yue, supra* at *9 ("Conseco's decision to adopt a COI rate increase for reasons other than

what the policies provide as permissible factors violates the policies."). Moreover, since mortality rates have only improved based upon longer life expectancies, the COI rate increases challenged here necessarily had to be based upon factors other than mortality, which is not allowed by the policy.

Likewise, Anderson has specifically alleged that Wilco has breached the policies by not maintaining or lowering COI rates in view that mortality rates, i.e., life expectancy, have actually improved, not worsened, since the policies were issued. (Doc. 1-1, Compl., ¶62.) In support of this allegation, Anderson has referenced updated mortality tables that indisputably show improved life expectancy rates. (*Id.*, ¶26.) Thus, Plaintiff has also plausibly alleged that (a) Wilco had the duty to determine COI rates based upon mortality factors, (b) mortality factors have improved due to longer life expectancy, and (c) Wilco has failed or refused to adjust its COI rates based upon favorable mortality factors as it is required to do so in the policy.

Anderson has sufficiently pled facts, which if proven true in discovery, will establish Wilco has breached the terms of its universal life policies.

**D.** **A Claim for Breach of the Covenant of Good Faith and Fair Dealing is Recognized Under Georgia Law and Should Not Be Dismissed.**

Wilco argues that Anderson cannot assert a claim for breach of the covenant of good faith and fair dealing in addition to her breach of contract claim. (Doc. 42, ¶18.) This, however, is not the law in Georgia. Though a breach of covenant claim cannot be brought *without* a breach of contract claim, Georgia law permits a breach of covenant claim to be brought in connection with, and in addition to, a breach of the contract claim.

The cases cited by Wilco in its motion to dismiss do not support its argument for dismissal; instead, they stand for the proposition that a party cannot assert a breach of covenant claim without

19

asserting a corresponding breach of contract claim. *See Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990) (granting summary judgment on breach of covenant claim because plaintiff failed to allege that "any explicit term in its contracts with [defendant] was breached"); *see also Stuart Enters. Int'l., Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 233 (2001) (holding that if the jury found for the defendant on the breach of contract claim, the breach of covenant claim could not survive).

Anderson is not asserting a breach of the covenant of good faith and fair dealing claim that is independent of a breach of contract claim. As previous discussed in Section A, the Complaint sets forth valid breach of contract claims in Count I. Plaintiff then alleges, in Count II, that Wilco breached the covenant of good faith and fair dealing. (Doc. 1-1,¶¶66-72.) Without question, the breach of covenant claim alleged in Count II is not asserted by itself, but instead is pled in addition to the breach of contract claim in Count I.

Georgia courts and federal courts interpreting Georgia law have repeatedly upheld a claim for breach of the covenant of good faith and fair dealing claim when brought in conjunction with a breach of contract claim. For example, in *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368 (N.D. Ga. 2004), the plaintiff pled a breach of contract claim in count six and a breach of the covenant of good faith and fair dealing claim in count seven. The defendant moved to dismiss the breach of covenant claim. *Id*. at 1380. The district court disagreed, stating "Plaintiff in this case is not asserting the breach of covenant to perform in good faith separate from the breach of contract claim." *Id*. at 1381 (denying the defendant's motion to dismiss the breach of covenant claim).

Several other cases reach the same result. *See, e.g., Clark v. Aaron's Inc.*, 914 F. Supp. 2d 1301, 1308 (N.D. Ga. 2012) ("The foregoing authority does not support Defendant's argument that

the causes of action for breach of the implied covenant and breach of contract are 'duplicative'; on the contrary, the causes of action are separate and distinct and may be pled simultaneously."); *Jacobs v. J.P. Morgan Chase Bank*, 2016 WL 8902587 at *5 (N.D. Ga. May 24, 2016) (rejecting defendant's assertion that claims for breach of the implied covenant and for breach of contract were duplicative, and denying motion to dismiss); *Tri-State Consumer Ins. Co., Inc. v. LexusNexus Risk Solutions, Inc.*, 823 F. Supp. 2d 1306, 1325-26 (N.D. Ga. 2011) (refusing to dismiss a claim for breach of the implied covenant of good faith and fair dealing because there was also a breach of contract claim); *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 595 (2009) (reversing the trial court's dismissal of the beach of covenant claim because "TechBios has adequately set forth a claim of breach of contract of the teaming agreement, and duties imposed by the teaming agreement also serve as a sufficient basis for its claim that [defendants] breached the implied covenant of good faith and fair dealing"); *Adams v. Mortgage Elec. Registration Sys., Inc.*, 2012 WL 1319453 at *4-5 (N.D. Ga. Apr. 16, 2012) (rejecting defendant's argument that a breach of covenant claim is not independent action apart from a breach of contract claim and finding that plaintiff had adequately pled the breach of covenant claim because it had adequately pled its breach of contract claim); *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("[I]n order to state a claim for breach of the implied duty of good faith and fair dealing, a plaintiff must set forth facts showing a breach of an actual term of an agreement."); *Benjamin v. BAC Home Loans Serv., L.P.*, 2012 WL 1067999, at *5 (S.D. Ga. Mar. 29, 2012) (denying motion to dismiss as to both breach of contract claim and separately alleged claim for breach of the implied covenant of good faith and fair dealing).

## V. CONCLUSION

For the reasons set forth herein, the Defendant's motion is due to be denied.

DATED: January 30, 2020

Respectfully submitted,

/s/ Charles A. McCallum, III
R. Brent Irby
Georgia Bar No. 224232
Charles A. McCallum, III (*Admitted Pro Hac Vice*)
McCallum, Hoaglund & Irby, LLP
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama 35216
Telephone: (205)824-7767
Facsimile: (205)824-7768
Email: birby@mhcilaw.com
cmccallum@mhcilaw.com
- and -
Lee W. Brigham (Ga. Bar No. 081698)
BELL & BRIGHAM
Post Office Box 1547
Augusta, Georgia 30903-1547
Telephone (706) 722-2014
Email: lee@bellbrigham.com

## CERTIFICATE OF SERVICE

This is to certify that on January 30, 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which automatically notifies counsel as follows:

Elizabeth Campbell
Georgia Bar No. 349249
Locke Lord LLP
Terminus 200, Suite 1200
333 Piedmont Road NE
Atlanta, Georgia 30305
Telephone: (404)870-4679
Facsimile: (404)806-5679
Email: ecampbell@lockelord.com

Carl C. Scherz (*admitted pro hac vice*)
Taylor Brinkman (*admitted pro hac vice*)
Anna K. Finger (*admitted pro hac vice*)
Locke Lord LLP
2200 Ross Avenue
Suite 2800
Dallas, Texas 75201
Telephone: (214)274-8079
Facsimile: (214)740-8800
Email: cscherz@lockelord.com
      tbrinkman@lockelord.com
      anna.k.finger@lockelord.com

                          /s/ Charles A. McCallum, III
                          COUNSEL