## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| VANESSA ANDERSON, individually and on behalf of a class of similarly situated persons, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| vs. | ) ) | Case No. 1:19-cv-00008-JRH-BKE |
| WILCO LIFE INSURANCE COMPANY, | ) ) ) | |
| *Defendant.* | ) | |

## WILCO LIFE'S REPLY IN SUPPORT OF ITS
## RENEWED MOTION TO DISMISS

## ARGUMENT

**1.    Plaintiff's Construction of the Policy is Unreasonable and Untenable.**

Plaintiff's argument against Wilco Life's Motion to Dismiss hinges entirely on her construction of the meaning of the highlighted portion of the following paragraph on the Policy data page 4:

```
                    POLICY DATA PAGE
        TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
                         PER $1,000
    ATTAINED    POLICY      RATE        ATTAINED    POLICY      RATE
      AGE        YEAR                     AGE        YEAR

      42         01        .07010         71         30       2 05420
      43         02        .08300         72         31       2.29830
      44         03        .09680         73         32       2.59080
      45         04        .11180         74         33       2 92750
      46         05        .12640         75         34       3.30330
      47         06        .29420         76         35       3.71000
      48         07        .31420         77         36       4.14580
      49         08        .33670         78         37       4.61750
      50         09        .36170         79         38       5.14000
      51         10        .38920         80         39       5 73420
      52         11        .42080         81         40       6.41750
      53         12        .45580         82         41       7.20500
      54         13        .49170         83         42       8.09330
      55         14        .53000         84         43       9 07250
      56         15        .56830         85         44      10.13170
      57         16        .60580         86         45      11 26330
      58         17        .64330         87         46      12.46580
      59         18        .68580         88         47      13.74000
      60         19        .73580         89         48      15.09580
      61         20        .79750         90         49      16.54420
      62         21        .87420         91         50      18.11830
      63         22        .96830         92         51      19.87750
      64         23       1.07420         93         52      21.94580
      65         24       1 18830         94         53      24 60250
      66         25       1.30670         95         54      28.41830
      67         26       1 42750         96         55      34 49000
      68         27       1.55250         97         56      44.77000
      69         28       1.69170         98         57      61 99670
      70         29       1.85500         99         58      83.33330
```

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONER'S 1980 STANDARD ORDINARY MALE MORTALITY TABLE, AGE LAST BIRTHDAY. ==ACTUAL MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY BASED ON THE POLICY COST FACTORS DESCRIBED IN YOUR POLICY.== HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

Policy 4.

While this Policy data page specifically lists out the exact percentage charges per $1,000 of coverage per policy year for the Policy's *guaranteed* monthly cost of insurance rates, the data page only generally references the Policy as to the *current* monthly COI rates.    This provision

does not specifically reference "policy cost factors" listed in the *guaranteed monthly cost of insurance rate* section of the Policy; rather, it just more generally references the "Policy" as a whole.

When one navigates to the section of the Policy titled "Cost of Insurance Rates," the Policy describes how Wilco Life has determined the guaranteed COI rates and also will determine the current COI rates:

> **COST OF INSURANCE RATES**
>
> The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue.
>
> Current monthly cost of insurance rates will be determined by the Company. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

Policy 13.

When discussing the guaranteed cost of insurance rates, the Policy's "Cost of Insurance Rates" section expressly identifies the "insured's sex," the "attained age," and the "premium class." When compared, this is similar to the Policy data page's discussion of guaranteed monthly cost of insurance rates.

However, the Policy's explanation of current monthly cost of insurance rates is separately treated. The Policy's "Cost of Insurance Rates" section sets forth and explains the limitations upon Wilco Life in setting the current rates in the two sentences of this paragraph dedicated to the explanation of the current monthly cost of insurance rates. First, the current rates "will be determined by the Company." Policy 13. And second, the current rates "will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page." *Id.* The phrase – "Current monthly cost of insurance rates will be determined by the Company" – gives discretion to Wilco Life. This provision does not reference or incorporate into its limitations the

elements of the guaranteed cost of insurance rates. And it does not expressly list the "insured's sex", the "attained age," and the "premium class" items that Plaintiff's argument is dependent upon.

Other U.S. Courts of Appeal have repeatedly held that the phrase "determined by the Company" acknowledges the granting of discretion to a company. *See e.g.*, *Cromwell v. United Steel Workers of Am.*, 423 F. App'x 213, 217 (3rd Cir. 2011); *see also Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002). In *Cromwell*, the plaintiff complained that his employer breached a collective bargaining agreement by unfairly and excessively delaying his training. 423 F. App'x at 216. In rejecting this claim, the court noted that the training was delayed for a long period of time; however, the underlying agreement provided that the "extent of . . . training shall be determined by the Company." *Id.* at 217. The *Cromwell* court held that such language provided the company "with discretion as to precisely" what training would be provided. *Id.* Likewise, in *Hickman*, the Tenth Circuit held that the phrase "as determined by the Company" gave the insurer discretion to calculate expenses. 299 F.3d at 1213.[1]

This construction of the Wilco Life Policy is also consistent with the district court opinions in *Coffman v. Pruco Life Insurance Co.* and *Baymiller v. Guarantee Mutual Life Co. See Coffman v. Pruco Life Ins. Co.*, 2011 WL 4550152, at *3 (D.N.J. Sept. 29, 2011); *Baymiller v. Guarantee Mut. Life Co.*, 2000 WL 1026565, at *2 (C.D. Cal. May 3, 2000). Just like Anderson's policy, the policy in *Coffman* did not describe or in any way limit how the insurer had to set the actual monthly COI rates—it stated only that the actual COI rates could be "up to the maximum monthly rate."

---

[1] This is not an unusual construction of this type of provision, and numerous courts have repeatedly held that this type of provision grants discretion to a company such as Wilco Life. *See, e.g., Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 827 (8th Cir. 2001); *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 620 (8th Cir. 1992); *Healthcare Am. Plans, Inc. v. Bossemeyer*, 1998 WL 869627, at *3 (10th Cir. Dec. 15 1998); *Ramsey v. Hercules Inc.*, 77 F.3d 199, 205-06 (7th Cir. 1996); *Strick Corp. v. United States*, 714 F.2d 1194, 1197-98 (3d Cir. 1983); *Fay v. Oxford Health Plan*, 287 F.3d 96, 107 (2d Cir. 2002); *Sterrett v. Giant Eagle, Inc.*, 2015 WL 791401, at *8 (W.D. Pa. Feb. 25, 2015).

*See* Policy 13; *Coffman*, 2011 WL 4550152, at *3. The court held that, in light of such language, "the only thing Pruco Life promised, and the only reasonable expectation that Plaintiff could have regarding the monthly mortality charge, is that the charge would not exceed the maximum set forth in the Policy." *Coffman*, 2011 WL 4550152, at *3. The court further held that the plaintiff's complaint failed to allege a breach of contract because "there is nothing in the Policy that dictates how much less [than the guaranteed maximum rates] Pruco Life must charge or what factors must be taken into account in making such a determination." *Id.*

*Baymiller* is equally compelling. The plaintiff in that case alleged not only that the insurer failed to properly calculate COI rates but also the interest rates credited to the plaintiff's cash value. *See Baymiller*, 2000 WL 1026565, at *1. Similar to the provision on page 13 of Anderson's policy, pertaining to the current monthly COI rates, the provision in Baymiller's policy pertaining to credited interest rates stated that such rates "may be applied . . . in the amount and by the method *determined by the Company*," so long as they were greater than the guaranteed minimum interest rate. *Id.* at *2 (emphasis added). The court held that the plaintiff failed to allege a breach because the quoted language unambiguously "provides the Defendants discretion to use a reasonable method and not a specific formula when crediting the policyholder any amount of interest above the guaranteed minimum rate." *Id*. In other words, the court said, "Guarantee Mutual had discretion to consider more than Plaintiffs' sex, age and rating class." *Id.* There is no material difference between the current monthly COI rate provision in Anderson's policy and the credited interest provision in Baymiller's policy; both said that the particular rate could be "*determined by the Company*." In *Baymiller*, the court held that such language provided the insurer with discretion. *See id*. This Court should conclude the same.

**2.**     **Plaintiff's Proposed Interpretation of the Policy Also Contravenes Several Rules of Contract Construction.**

For several additional reasons, Plaintiff's proposed policy interpretation is not a reasonable or correct one.  First, her proposed interpretation renders two Policy provisions inconsistent, even though contracts must be construed in a manner that permits all terms to be consistent with one another.  Secondly, Plaintiff's interpretation seeks to rewrite the Policy by engrafting factors applicable only to the *guaranteed* COI rates on to the *current* COI rates.  Finally, Plaintiff's interpretation ignores the essential factual context of life insurance.  When that context is factored into determining what a "reasonable policyholder's" expectations about what the Policy means, it cannot possibly mean what Plaintiff contends.

**A.**     **Plaintiff's proposed interpretation would render the two COI rate provisions irreconcilably inconsistent.**

As previously discussed, the provision on Page 4 references "the Policy" to determine how current monthly COI rates will be determined.  The Policy—specifically, Page 13—states that current monthly COI rates will be "determined by the Company" and "will not be greater than" the guaranteed COI rates.  Policy 13.  In other words and as previously discussed, for this particular product, there are not express, limiting factors that are described or added to the determination of the *current* monthly COI rates—other than the guaranteed rate ceiling.  This construction is entirely consistent with the provisions on Pages 4 and 13 of the Policy.

Plaintiff's proposed interpretation, however, would render the Policy data page inconsistent with the provisions on Page 13. Plaintiff would have this Court hold that the provision in the Policy data page means that Wilco Life can only consider "attained age," "sex," and "premium class" when "determining" the current monthly cost of insurance rates—even though the COI rate provision for current monthly cost of insurance rates on Page 12 does not restrict

Wilco Life to those factors. In fact, and obviously, the Policy uses those factors only in connection with the guaranteed monthly COI rates.

Plaintiff's interpretations also renders the two paragraphs in the "Cost of Insurance Rates" provision wholly inconsistent. Plaintiff contends that the guaranteed rates must only be calculated using the three factors expressly listed in the guaranteed monthly cost of insurance rates paragraph: "attained age," "sex," and "premium class." But simultaneously, through Plaintiff's bootstrapped construction of the Policy data page on page 4, Plaintiff also contends that the current monthly cost of insurance rate paragraph also can look only to those same three factors referenced above: "attained age," "sex," and "premium class." If Plaintiff's argument was correct, and both the guaranteed cost of insurance rates and the current cost of insurance rates could only be calculated using the same three identical factors ("attained age," "sex," and "premium class"), then those rates would have to be identical for both guaranteed cost of insurance and current cost of insurance—always. They could never be different under Plaintiff's construction because they would be constrained by identical factors. Clearly, Plaintiff's construction is wholly irreconcilable with the realities of the Policy and not a reasonable one. Those two sets of rates have never been identical.

Plaintiff's Policy, like all contracts, "must be construed in [its] entirety and in a manner that permits all of the terms contained therein to be consistent with one another." *Langley v. MP Spring Lake, LLC*, 834 S.E.2d 800, 804 (Ga. 2019). The only way to harmonize the provision on the Policy data page and the COI rate provision on Page 13 is by interpreting those provisions in the way that Wilco Life does. By adopting Plaintiff's interpretation, the Court would effectively be doing the opposite, and construing the Policy in a way that renders its provisions inconsistent.

**B.    Adopting Plaintiff's interpretation would effectively re-write the Policy.**

Furthermore, although Plaintiff accuses Wilco Life of trying to re-write the Policy, ironically, Plaintiff is the one that seeks to do just that.  Essentially, she argues that the Court should engraft language applicable only to *guaranteed* COI rates to the current monthly COI rates as well.  The COI rate provision on page 13 of the Policy discusses two distinct rates:  the guaranteed monthly cost of insurance rates <u>and</u> the current monthly cost of insurance rates.  Those rates are described in two separate paragraphs.  The paragraph describing the guaranteed rates states the following:

> The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue.  Attained age means the age on the prior policy anniversary except when this policy is issued when it means age last birthday prior to policy date.  These rates are shown on a Policy Data Page.

The paragraph describing the current monthly cost of insurance rates, on the other hand, is notably different:

> Current monthly cost of insurance rates will be determined by the Company.  The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

Plaintiff's interpretation, however, would effectively transpose the language in the guaranteed COI rates paragraph straight into the current COI rates provision as follows:

> Current monthly cost of insurance rates ==will be determined~~ by the Company~~ based on the insured's sex, attained age and premium class on the date of issue==.  The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

Policy 13 (highlighted language added, actual language stricken).  As Plaintiff recognizes, "a contracting party cannot simply add and delete language of its choosing after the fact."  Resp. 8 (citing *Covington v. Brewer*, 101 Ga. App. 724, 730 (1960)).  Wilco Life agrees, and Plaintiff's

interpretation would do just that. *See Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1150-51 (concluding that it was the plaintiff, not the insurer, who was seeking to rewrite the policy where he argued that the insurer could *only* consider enumerated factors).

### C. Plaintiff's authority in support of her arguments is not persuasive.

Plaintiff relies upon several district courts in support of her arguments. *See* Resp. 13-16 (citing, for example, *Vogt v. State Farm Life Ins. Co.*, 2018 WL 1747336, at *3 (W.D. Mo. Apr. 10, 2018); *Feller v. Transamerica Life Ins. Co.*, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016); *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 471 (S.D.N.Y. 2014)). None of those cases are persuasive, however, because none of those cases involved policy provisions like Plaintiff's policy—which states that current monthly COI rates "will be determined by the Company."[2]

Rather, in the cases cited by Plaintiff, the underlying policies stated either that the *current* COI rates would be determined "based on" certain factors or that "COI rates" in general would be "based on" certain factors. Thus, those cases did not address the question before this Court— whether a policy stating that *guaranteed* rates will be based on certain factors also includes an implicit restriction on how the insurer can determine *current* COI rates.

In the cases that *have* considered language more analogous to the *current* COI rate language in Plaintiff's policy, the courts held that the insurer *was not* bound to consider any particular factors. *See Coffman*, 2011 WL 4550152, at *4; *Baymiller*, 2000 WL 1026565, at *2.

---

[2]    Plaintiff also touts reliance on *Lincoln National Life Insurance Co. v. Bezich*, 33 N.E.3d 1160, 1168 (Ind. Ct. App. 2015). *Bezich* is an out-of-circuit case applying a different state's law. More importantly, in accepting review of the appellate court's decision, the Indiana Supreme Court vacated the underlying court of appeals decision, and that decision is neither persuasive nor mandatory authority. *See* 37 N.E.3d 493 (Ind. 2015) (granting petition for review, vacating court of appeals' opinion).

Likewise, the earlier ruling by the court in *Yue* was vacated following a settlement between the parties. *See* Final Judgment of Class Action at *9, *Yue v. Conseco Life Ins. Co.*, No. 2:11-CV-09596-DSF-SH (C.D. Cal. July 1, 2019).

Plaintiff's cases are also not persuasive because they interpret the relevant Policy language in a vacuum without acknowledging the practical implications of their chosen interpretation. Wilco Life (or any insurer, for that matter) literally could not calculate a COI rate by looking only to attained age, sex, and rating class. Yet that is what Plaintiff—and the several cases she cites— proposes the phrase "based on" to mean. Even Plaintiff seems to recognize the practical problems with her interpretation on some level. She argues that Wilco Life can only consider attained age, sex, and premium class—which are listed in the policy—but then also says that Wilco can also consider mortality, even though mortality is never expressly mentioned in COI provisions in the Policy.

The cases that support Wilco Life's interpretation, on the other hand, are more persuasive because they acknowledge that the proper interpretation of those policies must reflect the commercial realities of the life insurance industry. *See Norem*, 737 F.3d at 1150. For example, the *Norem* court found that its interpretation of the plaintiff's policy was buttressed by "what we know of the COI rate calculation process," *id.*, and that interpreting a policy in way that precludes a for-profit insurer from considering its profit margin would create a policy "disconnected from the reality of insurance." *Id.* at 1154-55. The court explained:

> Certainly no one expects that an auto or home insurer should make no profit on the premiums charged. Similarly, it is not unreasonable in a universal life insurance policy to consider profit as a secondary factor in calculating the COI rate, as no one is suggesting that Lincoln Benefit is not a for-profit entity. *And, as a more general matter, no one would expect to be able to enter into a business contract in which the consideration covered only the cost of the services rendered and nothing more—yet this is what [plaintiff] is in essence proposing with his suggestion that the COI charge should be strictly limited to what he calls "mortality" expenses.*

*Id.* at 1155 (emphasis added). Likewise, the court in *Mai Nhia Thao v. Midland National Life Insurance Co.* held that the insurer did not breach the policy by considering factors relating to, among other things, its goals "as a for-profit life insurance company" when setting COI rates. 549

10

F. App'x 534, 537-38 (7th Cir. 2013).  The *Baymiller* court also held that the defendant insurer in that case did not breach the policy by "considering its own profit objectives when calculating . . . interest rates and charges."  2000 WL 1026565, at *2.

The take-away from all of these cases, and the reason that they are the better reasoned cases, is that this Court cannot determine what a reasonably policyholder would expect Plaintiff's policy to mean without considering the essential context of the transaction.  Plaintiff ignores that context, and appears to suggest that a reasonable policyholder's expectations can be derived only from the words of the policy itself.  When that context is considered, however, Plaintiff's proposed interpretation falls apart.

3.     **The Cases Cited By Plaintiff Illustrate Why Plaintiff's Allegations Do Not Plausibly Suggest That Wilco Life Actually Breached Her Policy.**

Even if the Court endorses Plaintiff's policy interpretation, dismissal is still proper because Plaintiff failed to allege any facts that allow the Court to draw the reasonable inference that Wilco Life actually considered impermissible factors.  Several cases cited by Plaintiff show why her allegations are insufficient.  In all of those cases, the plaintiffs went beyond merely stating that the insurer considered impermissible factors and alleged additional *facts* supporting an inference that the insurance company acted as the plaintiff alleged.

In *EFG Bank AG v. Lincoln National Life Insurance Co.*, the court found that the plaintiffs alleged a breach because the insurer admitted in letters sent to plaintiffs (which were attached to the complaint) that it increased COI rates due to persistently low interest rates, volatile financial markets and the resulting investment losses.  2017 WL 4222887, at *4 (E.D. Pa. Sept. 22, 2017) ("Combined with the especially large magnitude of the COI rate increase, Lincoln's statements [in the letters] 'nudge Plaintiffs' claims across the line from conceivable to plausible.'" (brackets omitted)).

Similarly, the court in *Feller* found that the plaintiff's plausibly alleged a breach by alleging that: (1) the rate increase was so large ("as much as 100%"); (2) the policies were unprofitable; and (3) the insurer increased rates one business day after its risk-based capital allegedly became reportable by its parent company. 2016 WL 6602561, at *10 ("The alleged scale of [the rate] increases . . . , the timing of the [rate] increase . . . , and the alleged unprofitability of plaintiffs' policies, are sufficient to plausibly allege that Transamerica altered the [rate] in 2015 with an impermissible motive to mitigate its guaranteed interest obligations.").

And, finally, in *McMahon*, the plaintiffs alleged that "reserve funds held by Transamerica to cover the Policies' guaranteed interest rates have not kept up with Transamerica's projections," "Transamerica has suffered cash-flow problems due to its relationship with its ultimate parent company, . . . which demands significant dividend payments," and Transamerica reported to regulators that its cost of providing insurance for the block had "not changed in a meaningful way . . . ." 2018 WL 3381406, at *3-4 (N.D. Iowa July 11, 2018).

Contrast those factual allegations with Plaintiff's complaint. Plaintiff does not allege any facts like those alleged in *EFG Bank*, *Feller*, or *McMahon*. There is no factual allegation, for example, that the timing was suspicious, that Wilco Life reported to regulators that its mortality costs had not changed, or that Wilco Life admitted to policyholders that things like "lower investment income" was driving the decision.

The *only* fact arguably supporting Plaintiff's allegation that Wilco Life relied on impermissible factors when increasing COI rates is that "mortality rates have only improved" since her policy was issued. Compl. ¶ 26; Resp. 19. But that allegation does nothing to nudge her allegations across the line of plausibility because the mortality of the overall United States population is entirely irrelevant to the cost of insurance of her policy.

The essence of life insurance is the spreading of mortality risk across a pool of policyholders. As a result, the COI component of the premium is designed to cover the cost of providing insurance *to the pool of policyholders who create the risks*. No policyholder could reasonably expect a life insurer to set costs of a product based on the mortality of the overall population, which includes persons not in the pool of policyholders who have purchased that product. After all, the mortality of people who purchased Plaintiff's policy may be worse than expected even as overall mortality improves. In fact, this was the case for the CIUL2 policies. If this case proceeds to discovery, discovery will show that Wilco Life experienced much greater mortality on the CIUL2 block than was anticipated at pricing.

In summary, the Court cannot reasonably infer from the complaint that Wilco Life actually relied on impermissible factors in adjusting Plaintiff's COI rates. Gone are the days when plaintiffs can subject defendants to costly and burdensome discovery just by alleging that the defendant acted unlawfully without alleging some factual predicate to support that allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Just because Plaintiff declares it in her pleading does not make it so.[3]

---

[3] Plaintiff also argues that her allegations of malfeasance are plausible because Wilco Life's predecessor settled a class action for a different insurance product in 2013. Resp. 18; Compl. ¶14. The *Yue* class action involved a COI rate increase that took place in 2002, on different products (Valuterm and Valulife), which had materially different COI rate provisions from the provision at issue here. *See Yue v. Conseco Life Ins. Co.*, 2011 WL 210943, at *2 (C.D. Cal. Jan. 19, 2011). Moreover, the *Yue* court found that Conseco Life breached the policies because it considered lapse rates and the average amount of death benefits that it expected to pay for insureds who died while their policies remained in force—which are different factors than Plaintiff alleges that Wilco Life relied on here. Thus, the *Yue* settlement also does not advance her allegations across the line between possible and plausible.

**4.      Breach of the Implied Covenant of Good Faith and Fair Dealing is Not Separately Actionable From Her Breach of Contract Claim.**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because Plaintiff cannot sustain an independent claim based on the covenant. Plaintiff cites several cases for the proposition that a breach of covenant claim requires an actionable breach of contract claim. Resp. 20. That is one reason Plaintiff's breach of good faith claim should be dismissed. Because (for the reasons discussed in the previous two sections) Plaintiff has failed to state a claim for breach of contract, she cannot state a claim for breach of good faith, either.

But Georgia law requires dismissal of a claim for breach of good faith even when the plaintiff *has* pleaded an actionable breach of an express contract. *See e.g.*, *Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1162 (dismissing claim for breach of covenant claim while allowing breach of contract claim to proceed). The reason is that the implied covenant of good faith and fair dealing is not a cause of action. *See Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990). It is a *doctrine* engrafted on to the express terms of the contract itself. It becomes part of the contract, meaning that it cannot be breached apart from the contract. Any allegation that Wilco Life breached the implied covenant of good faith and fair dealing is therefore part and parcel of the breach of contract claim—there are not two claims that the court should consider.

The implied covenant of good faith and fair dealing is not a viable independent cause of action. That was exactly the ruling in *Garrett*, 427 F. Supp. 2d at 1162 (dismissing the breach of covenant claim but stating that "the covenant is still applicable when considering Plaintiff's breach of contract claim"), and *AlphaStaff, Inc. v. Kronos Hotels, LLC.* 2008 WL 11336202, *1-2 (N.D. Ga. Sept. 26, 2008) (finding that the covenant is "still applicable," but that the claim should be

dismissed because "some of the same facts" support both the breach of contract claim and the breach of implied covenant claim). Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

82456858v.12

Date: February 27, 2020.                    Respectfully submitted,


                                            /s/    *Taylor F. Brinkman*
                                            Elizabeth Campbell
                                            Georgia Bar No. 349249
                                            Locke Lord LLP
                                            Terminus 200, Suite 1200
                                            333 Piedmont Road NE
                                            Atlanta, GA 30305
                                            T: (404) 870-4679
                                            F: (404) 806-5679
                                            ecampbell@lockelord.com

                                            –and–

                                            Carl C. Scherz (pro hac vice)
                                            Taylor Brinkman (pro hac vice)
                                            Anna K. Finger (pro hac vice)
                                            LOCKE LORD LLP
                                            2200 Ross Avenue, Suite 2800
                                            Dallas, TX 75201
                                            T: (214) 274-8079
                                            F: (214) 740-8800
                                            cscherz@lockelord.com
                                            tbrinkman@lockelord.com
                                            anna.k.finger@lockelord.com

                                            **ATTORNEYS FOR WILCO LIFE
                                            INSURANCE COMPANY**


## CERTIFICATE OF SERVICE

I certify that on February 27, 2020, I filed this document using the Court's Electronic Case Filing ("ECF") system, which will automatically deliver a notice of electronic filing to Plaintiff's counsel of record. Delivery of such notice constitutes service of this document as contemplated by Rule 5 of the Federal Rules of Civil Procedure.

                                            /s/    *Taylor F. Brinkman*